[No. D044147. Fourth Dist., Div. One. Sept. 29, 2004.]

THE PEOPLE ex rel. BILL LOCKYER, as Attorney General, etc., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
COLE NATIONAL CORPORATION et al., Real Parties in Interest.

### COUNSEL

Bill Lockyer, Attorney General, Taylor Carey, Acting Chief Assistant Attorney General, James Humes, Chief Assistant Attorney General, Andrea Hoch, Assistant Attorney General, Albert Norman Shelden, Acting Assistant Attorney General, Susan A. Ruff, Diane de Kervor, T. Michelle Laird and Ron Espinoza, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Jones Day, Elwood Lui, Thomas R. Malcolm, Richard J. Grabowski and Mark D. Kemple for Real Parties in Interest.

### OPINION

**NARES, J.**—On this petition for writ of mandate, petitioner People of the State of California seek to set aside discovery orders made by the court related to real parties in interest Cole National Corporation, Cole National Group, Inc., Cole Vision Corporation, Cole Vision Services, Inc., Pearle, Inc., Pearle Vision, Inc., Pearle VisionCare, Inc., and Stanley C. Pearle's (collectively, Cole's) request for production of documents and deposition notices directed to the People. The court ordered that the People (1) produce all documents responsive to Cole's request for production of documents, regardless of whether they were privileged or confidential, unless the People had raised a specific objection as to particular documents; (2) produce documents in the possession of nonparty state agencies; (3) produce without objection documents produced by the People in a separate federal court action that were the subject of a protective order; (4) produce for deposition persons most knowledgeable at nonparty state agencies; and (5) not raise any objections to the deposition notices or at the depositions that were raised with regard to Cole's request for production of documents.

The People filed this petition, asserting that the court abused its discretion in making those discovery orders as (1) they raised timely objections under Code of Civil Procedure[1] section 2031 on the grounds of privilege to Cole's request for production of documents and served a privilege log, and the court never ordered that they produce a more detailed log or objections; (2) they

---

[1] All further statutory references shall be to the Code of Civil Procedure unless otherwise specified.

were not required to produce documents in the possession of nonparty state agencies; (3) they were not required to produce for deposition witnesses from nonparty state agencies; and (4) they were not required to produce documents subject to a protective order in the federal court action unless a similar protective order was entered into in this action. We grant the People's petition, with instructions.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. *The Pleadings*

The People's complaint charged Pearle, Inc. (Pearle), an optician and retailer of eyeglasses, and Pearle VisionCare, Inc. (Pearle VisionCare), a provider of optometry services, with violating Business and Professions Code sections 655 and 2556, which govern the practice of optometry and prohibit opticians and eyeglass retailers from advertising optometric services, and forbid opticians and eyeglass retailers from having financial connections with optometrists, as well as other practices. Pearle and Pearle VisionCare filed a cross-complaint against the Attorney General of the State of California (Attorney General) and Kathleen Hamilton, Director of the Department of Consumer Affairs (Director), alleging that the laws regulating relationships between opticians/optical retailers and optometrists, including Business and Professions Code sections 655 and 2556, violated the commerce, equal protection, and due process clauses, as well as the First Amendment of the federal Constitution. Pearle and Pearle VisionCare also asserted that they were not subject to Business and Professions Code sections 655 and 2556 because Pearle VisionCare was an approved provider under the Knox-Keene Healthcare Service Plan Act (Knox-Keene Act), and thus exempt from those provisions.

### B. *Injunction and First Appeal*

The People filed a motion for preliminary injunction, seeking to enjoin Pearle from advertising eye exams and to enjoin Pearle VisionCare from charging a fee for dilating patients' eyes with eye drops. The court granted the People's request for a preliminary injunction, prohibiting Pearle from disseminating advertising in California that would mislead consumers into believing that it employed optometrists. The order further provided that Pearle could still mention eye examinations, doctors and optometrists in its advertisements as long as they contained a disclaimer that Pearle did not

---

[2] We have taken much of the factual background from our decision in the first appeal in this case, *People v. Cole* (2003) 113 Cal.App.4th 955 [7 Cal.Rptr.3d 333], review granted March 3, 2004, S121724 (*Cole I*).

employ optometrists or provide eye exams in California. The court also enjoined Pearle VisionCare from charging a fee for dilating patients' eyes with eye drops.

Pearle and Pearle VisionCare and the People appealed from the order granting the preliminary injunction. In a published opinion filed on November 26, 2003 (*Cole I*), we affirmed in part and reversed in part. We first concluded that the court properly enjoined Pearle's advertising, as it was both illegal and misleading. However, we also concluded that the court erred in allowing Pearle to continue advertising optometric services if it also provided a disclaimer that Pearle VisionCare provided those services. We further concluded that the court erred in enjoining Pearle VisionCare from charging a fee for dilating patients' eyes with eye drops, and we rejected the People's other objections to the terms of the injunction. On March 3, 2004, the California Supreme Court granted Pearle and Pearle VisionCare's petition for review (S121724), and the matter is presently pending before that court.

### C. *Demurrer and Second Appeal*

The Attorney General and Director demurred to Pearle and Pearle VisionCare's cross-complaint, arguing that their claims failed as a matter of law. The court sustained the demurrer without leave to amend and the court dismissed appellants' cross-complaint. Pearle and Pearle VisionCare appealed that judgment. (*Pearle Vision, Inc. v. The People ex rel. Bill Lockyer* (D041969, app. pending).) On April 16, 2004, we ordered the appeal stayed based upon the parties' request and stipulation, pending the California Supreme Court's resolution of the issues pending in *Cole I*.

### D. *Federal Court Litigation*

In July 2002, Lenscrafters, Inc., Eye Care Center of America and the National Association of Optometrists and Opticians (NAOO), filed a civil rights action under title 42 United States Code section 1983 in the United States District Court for the Eastern District of California, against the Attorney General and the Department of Consumer Affairs (DCA), challenging the constitutionality of Business and Professions Code sections 655 and 2556 (NAOO case or federal case).

In August 2003, the parties in the NAOO case entered into a stipulation and protective order, whereby the People and DCA agreed to produce to the plaintiffs in that action certain documents they asserted were confidential or privileged, upon the agreement that the plaintiffs in that case would not disclose them outside of that litigation. The Attorney General and the DCA produced documents to the plaintiffs in the NAOO case, along with a detailed privilege log of documents being withheld on the grounds of privilege.

## E. *Discovery Dispute*

In May 2002, Cole served a request for production of documents on the People, seeking production of 322 categories of documents. The People filed timely responses, which contained objections based upon attorney-client, attorney work product and official information privileges, and protections under the Information Practices Act (Civ. Code, § 1798 et seq.). The People also objected to Cole's definition of the words "People" and "You" and "Yours" in the discovery requests as those terms could include nonparties, and to Cole's definition of what documents were within its "possession, custody and control."

The People and Cole began a "meet and confer" process wherein they discussed certain of the People's responses and objections. In August 2002, Cole requested that the People provide a privilege log describing any documents that the People considered privileged and that should not be produced.

Thereafter, all proceedings in the matter were stayed from October 2002 to February 14, 2003. On February 13, 2003, the day before the stay was to be lifted, the People provided a privilege log to Cole. However, the privilege log listed categories of documents, rather than individual privileged documents. The People offered to amend the privilege log if Cole's requests for production were narrowed. The People and Cole thereafter met and conferred concerning the privilege log, Cole asserting that it was inadequate and that they would move to compel all documents being withheld on the basis of privilege if a more detailed log was not produced.

In March 2003, Cole brought a motion to compel production of documents. Cole first objected to the People's decision to identify responsive documents, as opposed to producing them to Cole. Cole also objected to the People's identification only of documents that supported their claims, as opposed to ones that were responsive but might not support those claims. Cole challenged three objections the People made to production: (1) that they need not produce documents that were in Cole's possession or matters of public record and therefore "equally available" to Cole; (2) that production would be unduly burdensome; and (3) that their documents were organized in a manner that production would invade their work product privilege. Cole also sought a ruling that the People's "boilerplate" objections—that the requests for production were "vague and ambiguous," "without limitation as to scope and time," and constituted "expert witness discovery"—were without merit. Finally, Cole sought an order compelling the People to provide a statement that they would comply with the request for production and produce all responsive documents. However, the motion specifically noted that it was *not* challenging the

privileges asserted by the People in their response or privilege log as the parties were in the process of meeting and conferring concerning those objections, and that Cole would "reserve the right to subsequently challenge any privilege claims not resolved by the meet and confer process." The motion also did not seek to declare invalid the People's general objections to Cole's definitions of "People," "You," "Yours," and what documents were considered to be in their "possession, custody and control."

The People opposed the motion, asserting that the only documents that they did not produce were Cole's own documents and public filings that were equally available to Cole. The People also asserted that its statement of compliance was proper. Further, the People defended their objections based upon the manner that Cole's requests were framed. The People asserted that their objection that documents were equally available to Cole was proper as to documents that were already in Cole's possession. The People objected to producing documents they had premarked as violative of the work product privilege. The People renewed their contention that the requests for production contained vague and ambiguous terms. The People also objected to the fact that the requests were not limited by time and asserted that the broadness of the requests implied that they sought expert witness discovery. The People did not discuss whether they were required to produce documents not in their immediate possession. The People also acknowledged that their objections on the grounds of privilege were not the subject of the motion and asserted that Cole had waived the right to challenge those objections by not addressing them in the motion.

In Cole's reply brief, they disputed the fact that they had waived the right to challenge the People's privilege objections and noted that the parties were still meeting and conferring as to those issues and that they would be the subject of a separate motion.

The matter was assigned to a discovery referee, the Honorable Arthur Jones (Ret.). Judge Jones recommended that the motion be granted in its entirety and that all objections be overruled, with the exception of any claims of privilege as "assertions of privilege were not raised by the motion and such are reserved for further hearing if necessary." The referee's report made clear that its recommendations were only as to the requests and objections delineated in Cole's motion. Judge Jones did not discuss any issue or recommend any order beyond the issues raised by the parties in Cole's motion to compel. The court thereafter adopted the referee's report. As to the People's claims of privilege, the court's order stated that their "assertions of privilege in [their] February 13, 2003 privilege log are reserved from the Motion and Request for Sanctions, and no ruling is made as to their validity and sufficiency." The court overruled the People's objections to the document

requests at issue on Cole's motion. The court ordered the People to produce all documents responsive to the requests enumerated in Cole's motion in the People's "possession, custody or control." Neither the referee's report nor the order addressed the People's objections to the definitions of "People," "You," "Yours," and what documents were considered to be in their "possession, custody or control." The People were ordered to produce all nonprivileged, responsive documents within 20 days and serve a statement that they had complied with the request for production.

In August 2003, the People submitted a statement of compliance in accordance with the court's order and produced documents to Cole. However, according to the People, they did not produce any privileged documents as such was not required by the court's order, or documents in the possession of "non-party entities," such as nonparty state agencies, as it was their position that the motion to compel did not challenge the People's objections that Cole's definitions of "People," "Plaintiff," "You" and "Yours" were overbroad as requiring production of documents in the possession of third parties.

Thereafter, the parties entered into a series of stipulations extending the deadline for Cole to bring a motion to compel concerning the People's claims of privilege. At the same time, the People asserted a right to claim that Cole had waived the right to bring a motion as to privileged documents by not bringing it as part of their original motion to compel documents.

In January 2004, Cole wrote a letter to counsel for the People, alleging that the People had improperly withheld documents from production. Specifically, Cole asserted that they had discovered from parties in the NAOO action (presumably, the plaintiffs in that action) that the People had produced in the NAOO action documents showing that state agencies had historically interpreted Business and Professions Code sections 655 and 2556 as not applying to entities such as Pearle VisionCare that were covered by the Knox-Keene Act. Cole asserted that such documents were within the scope of their requests for production and subject to the court's order compelling production. The People responded, requesting information as to the manner in which the documents were obtained, and what documents were obtained, so that they could determine whether they were subject to any privilege objections or the protective order in the NAOO action. Cole rejected that request and accused the People of concealing documents. The People responded by claiming the documents identified by Cole were either not responsive to their requests or privileged. The parties continued to meet and confer regarding the issue, but without success.

In March 2004, Cole brought a motion entitled "Motion for an Order Requiring Immediate Production of Critical Documents Concealed and Withheld by the People." That motion sought an order compelling the People to

(1) produce copies of "all documents <u>produced</u> by the Attorney General or Department of Consumer Affairs, including the Medical Board and Board of Optometry, in the Federal Action, whether or not designated 'confidential' and without 'culling' from these already <u>produced</u> documents those the 'State Team' would prefer were not produced" (original underscoring); and (2) reverify their responses to Cole's first set of production of documents that they were not withholding any documents on the basis they were in the files of a separate state agency, were confidential, or privileged, unless the People could show that a specific claim of privilege was made prior to February 2004 for a specific document. In addition to asserting that the People improperly withheld documents from state agencies allegedly interpreting application of Business and Professions Code sections 655 and 2556, Cole also accused the People of shredding relevant documents a year earlier.

The People opposed Cole's motion, asserting that Cole had not challenged their objections on the grounds of privilege and to their not producing documents in the possession of third parties in their original motion to compel, and that they had therefore waived the right to pursue such documents. The People also argued that they had not waived the right to assert privileges by raising objections in their original responses to Cole's request for production of documents, and their privilege log. The People also asserted that Cole could not seek discovery from nonparty state agencies through requests for production propounded on the People. The People asserted they had no obligation to turn over documents from the NAOO case because (1) the parties there were the Attorney General and the DCA; (2) the documents produced there came from nonparty state agencies; and (3) they were subject to a protective order and privileges raised in that action. The People also claimed that the state agency documents referred to by Cole were irrelevant to the issues raised in this action because they were not formal interpretations of the Knox-Keene Act by agencies charged with enforcing its terms.

At the hearing on Cole's motion, the People argued that the parties had been meeting and conferring regarding their privilege objections, discovery had been stayed by the court, they had a supplemental privilege log ready to serve on Cole, and that the parties had stipulated that the matter of privileges would be litigated at a later date. Cole took the position that the court's previous order granting their motion to compel ordered that all privileges were waived unless specifically listed in the People's privilege log. The People requested permission to file a supplemental brief to address this contention and offered to attach a copy of the court's prior order and a supplemental privilege log.

The court granted Cole's motion, finding that because of "the State's erroneous definition of applicable agencies' status as agents of the party

litigants and based on a failure to properly identify documents and assert privileges to the disputed documents, the court concludes plaintiff the People failed to comply with the letter and spirit of the court's July 28, 2003 discovery order." The court ordered the People to produce "copies of all documents produced by the Attorney General or Department of Consumer Affairs, including Medical Board and Board of Optometry, in the Federal action, whether or not designated 'confidential' or 'privileged.' " The court further ordered the People to reverify their responses to Cole's first set of requests for production, and to "withhold no documents on the basis that the documents are (a) in the files of a 'separate government agency,' (b) 'confidential,' or (c) 'privileged' unless the People can show that a specific claim of privilege was made at any time prior to February 2004 for that specific document."

During the pendency of Cole's discovery motion, they served a deposition notice and document production request on the People, seeking to depose the person or persons most knowledgeable for the Department of Consumer Affairs, California Medical Board and Board of Optometry. The People filed a motion to quash the deposition notice and for a protective order. The People objected to the deposition notices on grounds similar to their opposition to Cole's discovery motion: (1) that it was not proper to serve them with deposition notices for production of nonparty state agencies; and (2) the notice sought information protected by the attorney-client and attorney work product privileges.

The court denied both the motion to quash and the motion for a protective order. In doing so, the court stated:

"The Plaintiff is reminded that the People's objections are overruled. In the future, the Court does not anticipate the People will re-assert any of the objections raised by these motions or raised within Defendants' April 2d motion for immediate production. The Court is mindful, however, that during the subject depositions the People have the right to assert certain meritorious objections that fall outside the scope of these motions."

The People filed this petition seeking to overturn the court's order granting Cole's motion to compel and denying their motion to quash and for protective order and requested that we stay the matter. We stayed all further discovery in the matter and issued an order to show cause why the People's petition should not be granted.

## DISCUSSION

### I. RELIEF APPROPRIATE BY MANDATE

"Interlocutory review by writ is the only adequate remedy where a court orders production of documents which may be subject to a privilege, 'since once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure.' [Citation.] The attorney-client privilege 'deserves a particularly high degree of protection in this regard since it is a legislatively created privilege protecting important public policy interests, particularly the confidential relationship of attorney and client and their freedom to discuss matters in confidence.' [Citations.]" (*Korea Data Systems Co. v. Superior Court* (1997) 51 Cal.App.4th 1513, 1516 [59 Cal.Rptr.2d 925] (*Korea Data*).)

### II. STANDARD OF REVIEW

We review discovery orders for an abuse of discretion. (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1261 [245 Cal.Rptr. 682].) Under this standard, a trial court's ruling on a discovery motion "will be overturned upon a prerogative writ if there is no substantial basis for the manner in which trial court discretion was exercised or if the trial court applied a patently improper standard of decision." (*Coriell v. Superior Court* (1974) 39 Cal.App.3d 487, 491, fn. 1 [114 Cal.Rptr. 310].) Moreover, where the propriety of a discovery sanction turns on statutory interpretation, we review the issue de novo, as a question of law. (*Argaman v. Ratan* (1999) 73 Cal.App.4th 1173, 1176 [86 Cal.Rptr.2d 917].)

### III. ANALYSIS

The People assert that the court abused its discretion and erred as a matter of law in entering its discovery orders because (1) they raised timely objections on the grounds of privilege to Cole's request for production of documents and served a privilege log and the court never ordered that they produce a more detailed log or objections; (2) they were not required to produce documents in the possession of nonparty state agencies nor witnesses from nonparty state agencies for deposition; and (3) they were not required to produce documents subject to a protective order in the federal court action unless a similar protective order was entered into in this action. We address each of these contentions in turn.

#### A. The Claims of Privilege

In *Korea Data, supra,* 51 Cal.App.4th 1513, the defendant served the plaintiff with a request for production of documents. The plaintiff served a

timely but nonspecific response, which included general objections based upon the attorney/client privilege and the work product doctrine. The defendant filed a motion pursuant to section 2031, subdivision (*l*), seeking further responses in compliance with the specificity requirements of section 2031, subdivision (f) and to compel the plaintiff to serve a privilege log. The plaintiff opposed the motion but served a privilege log shortly after being served with the motion. The court appointed a discovery referee to handle the discovery dispute. The referee issued a report recommending that the defendant's motion be granted and that " '[o]bjections to all the document [*sic*] demand[ed], including those objections on attorney-client and work product grounds set forth in [petitioners'] untimely "privilege log" provided only after this motion was filed, are overruled . . . .' " (*Korea Data, supra,* 51 Cal.App.4th at p. 1515.) The plaintiff filed objections to the report and moved the referee to relieve them from the waiver under section 2031, subdivision (k).[3] The motion was denied. The trial court then adopted the referee's recommendations and found a waiver of the attorney-client and work product privileges. (*Korea Data, supra,* at pp. 1515–1516.)

The plaintiff filed a petition for writ of mandate, which the Court of Appeal granted. In doing so, the Court of Appeal stated, "We agree with [plaintiff's] claim that the court erred in finding the attorney-client privilege waived by the untimely filing of a privilege log. Section 2031, subdivision (k) provides in part: 'If a party to whom an inspection demand has been directed fails to serve a timely response to it, that party waives any objection to the demand, including one based on privilege or on the protection for work product under Section 2018.' Here, [plaintiff] filed timely objections to the discovery request, albeit 'boiler plate' objections lacking the specificity the statute mandates. While the code calls for more specific responses than were originally provided, and while we recognize the use of 'boiler plate' objections as were provided in this case may be sanctionable, the appropriate sanction is not a judicially imposed waiver of the attorney-client privilege." (*Korea Data, supra,* 51 Cal.App.4th at p. 1516.)

A similar result was reached in the recent case *Best Product, Inc. v. Superior Court* (2004) 119 Cal.App.4th 1181 [15 Cal.Rptr.3d 154] (*Best Product*). There, plaintiff served a set of requests for production of documents and special interrogatories. The defendant responded to both discovery

---

[3] Subdivision (k) of section 2031 has since been redesignated as subdivision (*l*). (Stats. 1999, ch. 48, § 1.) Section 2031, subdivision (*l*) provides in part: "If a party to whom an inspection demand has been directed fails to serve a timely response to it, that party waives any objection to the demand, including one based on privilege or on the protection for work product under Section 2018. However, the court, on motion, may relieve that party from this waiver on its determination that (1) the party has subsequently served a response that is in substantial compliance with subdivision (g), and (2) the party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect."

requests with boilerplate objections, including attorney-client privilege and work product privilege. A meet and confer process did not resolve the parties' differences about the defendant's boilerplate objections. The plaintiff then filed two motions. One was a motion to provide a full and complete statement of compliance, without further objection, to plaintiff's first set of requests for production of documents. The plaintiff also asserted that if the defendant intended to raise the attorney-client privilege, it must prepare a privilege log setting forth sufficient information to determine whether or not any privilege applied. The plaintiff argued that the defendant's failure to do so was an implicit admission that the objection based upon privilege should be overruled. Plaintiff's other motion was to compel further responses to its interrogatories, also without objection. (*Id.* at pp. 1184–1185.)

At the hearing on the plaintiff's motion, the defendant informed the court that it was in the process of preparing a privilege log. However, the court ruled that the privilege log was untimely and overruled the defendant's objections on the grounds of privilege. (*Best Product, supra,* 119 Cal.App.4th at p. 1186.) The defendant filed a petition for writ of mandate, which, as in *Korea Data,* the Court of Appeal granted.

In granting the defendant's petition for writ of mandate and finding that the court had erred in overruling the defendant's privilege objections, the court stated: "The trial court effectively held that defendant had waived its right to assert the attorney-client and work product privileges because it had failed to file a privilege log in regard to plaintiff's request to inspect and produce. That ruling was error. Statutory law recognizes only three methods by which a party can waive a privilege. Two are found in Evidence Code section 912 and are inapplicable to this cause. The one pertinent to this proceeding is found in [section 2031, subdivision (*l*)]. It provides: 'If a party to whom an inspection demand has been directed fails to serve a timely response to it, that party waives any objection to the demand, including one based on privilege or on the protection for work product under Section 2018.' Consequently, only if defendant had failed to file a timely response to plaintiff's demand can the court find a waiver of privilege. There is absolutely no requirement that a privilege log be tendered at this point of the discovery proceedings. [Citation.] Because defendant did assert the attorney-client and work product privileges in a timely manner, albeit in a boilerplate fashion, the court erred in finding a waiver of privilege(s)." (*Best Product, supra,* 119 Cal.App.4th at pp. 1187–1188, fns. omitted.)

"To a certain extent, it appears that the trial court misapprehended the stage of a proceeding at which a privilege log becomes relevant. As we recently explained: '[T]he expression, "privilege log," does not appear in section 2031 or anywhere else in the Code of Civil Procedure[.] . . . The expression is

jargon, commonly used by courts and attorneys to express the requirements of subdivision (g)(3) of section 2031. [Citations.] [¶] The purpose of a "privilege log" is to provide a specific factual description of documents in aid of substantiating a claim of privilege in connection with a request for document production. [Citation.] The purpose of providing a specific factual description of documents is to permit a judicial evaluation of the claim of privilege. [Citations.]' [Citation.]" (*Best Product, supra,* 119 Cal.App.4th at pp. 1188–1189, fn. omitted.)

"The need for a privilege log could have arisen had plaintiff properly moved to compel further responses to contest defendant's conclusory attorney-client and work product objections. Subdivision (m) of section 2031 provides: 'If the party demanding an inspection, on receipt of a response to an inspection demand, deems . . . (3) an objection in the response is without merit or too general, that party may move for an order compelling further response to the demand.' In that context, defendant could be required to produce a privilege log that is sufficiently specific so the trial court could determine whether a specific document is or is not privileged. Plaintiff, however, did not rely upon that statutory provision in bringing its motion. [¶] In any event, even had plaintiff brought and prevailed on a motion on that statutory ground, the court could not find a waiver of privilege. The statute [authorizes] the court to make orders compelling further responses that adequately identify and describe documents for which a party (here, defendant) has raised boilerplate assertions of the attorney-client and work product privileges. If defendant fails to comply with such an order, section 2031 sets forth the exclusive remedies available to the court. The trial court can 'make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Section 2023. In lieu of or in addition to that sanction, the court [could] impose a monetary sanction under Section 2023.' (§ 2031, subd. (m).) However, even at that juncture, the statute does *not* include as an authorized sanction a judicial order that a privilege has been waived." (*Best Product, supra,* 119 Cal.App.4th at p. 1189, fn. omitted; see also *Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 292 [4 Cal.Rptr.3d 883].)

*Korea Data* and *Best Product* dictate that the court erred in overruling the People's privilege objections in this case.

First, it is undisputed that the People's original response was timely and contained objections on the grounds of privilege. The People thereafter, although not required to, produced a privilege log. Because the People timely objected on the grounds of privilege, they preserved these objections, regardless of whether the objections were sufficiently detailed in their response or privilege log and the court, as a matter of law, could not find that they had

waived these privileges. (§ 2031, subd. (*l*); *Korea Data, supra,* 51 Cal.App.4th at p. 1516; *Best Product, supra,* 119 Cal.App.4th at pp. 1187–1189.)

Further, no motion was made under section 2031, subdivision (m) seeking a further and more specific identification of documents withheld on the basis of privilege, either by a further response or a more detailed privilege log. Only had such a motion been made, would the need for a privilege log have even have arisen. (*Best Product, supra,* 119 Cal.App.4th at p. 1189.) Even if such a motion were brought, and the court ordered a more specific description of the privileges raised and documents withheld, and the party thereafter failed to comply with the order, the court would *still* be in error if it ordered privileges waived. In such a case, the court could " 'make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Section 2023. In lieu of or in addition to that sanction, the court [could] impose a monetary sanction under Section 2023.' (§ 2031, subd. (m).) However, even at that juncture, the statute does *not* include as an authorized sanction a judicial order that a privilege has been waived." (*Best Product, supra,* 119 Cal.App.4th at p. 1189, fn. omitted.)

■ Cole points to deficiencies in the People's privilege log and asserts that because the People never produced a proper one, the court properly ordered any privileges not adequately stated therein to be waived. However, as detailed above, this argument is unavailing. First, deficient objections or claims of privilege are not grounds for waiver, so long as a party, such as the People here, made timely objections in their original response. Further, there is no obligation to produce a privilege log at all, unless ordered to do so by the court upon a motion by a party seeking such a document. No such motion was made, and no such order was entered. Second, even if the court had ordered the People to produce a privilege log, or to produce a more detailed one, and the People failed to do so, no waiver of privileges could be found. While the court would have other sanctions available to it in such a situation, a waiver of privileges was not authorized by statute.

■ Cole's remedy at this point is to compel the People to produce a more detailed privilege log. Then, if the People fail to do so, or their response is inadequate, they may seek relief from the court pursuant to section 2031, subdivision (m). However, to be clear, even at that stage Cole could not seek a waiver of any privileges raised. Thus, the court erred as a matter of law in ordering the People to produce documents without regard to whether they were privileged and that in response to Cole's subpoenas they produce documents and witnesses without objection on the basis of privilege. We therefore grant the People's petition and order the court to set aside these orders.

### B. *Discovery Related to Other State Agencies*

Section 2031, subdivision (a)(1) provides:

"(a) Any party may obtain discovery within the scope delimited by Section 2017, and subject to the restrictions set forth in Section 2019, by inspecting documents, tangible things, and land or other property *that are in the possession, custody, or control of any other party to the action.* [¶] (1) A party may demand that any other party produce and permit the party making the demand, or someone acting on that party's behalf, to inspect and to copy a document *that is in the possession, custody, or control of the party on whom the demand is made.*" (Italics added.)

Section 2025, subdivision (h) provides:

"(h)(1) The service of a deposition notice under subdivision (c) is effective to require any deponent *who is a party to the action or an officer, director, managing agent, or employee of a party* to attend and to testify, as well as to produce any document or tangible thing for inspection and copying. [¶] (2) *The attendance and testimony of any other deponent, as well as the production by the deponent of any document or tangible thing for inspection and copying, requires the service on the deponent of a deposition subpoena under Section 2020.*" (Italics added.)

The state agencies from which Cole requested documents and witnesses are not parties to this litigation.[4] Therefore, because a state agency would also not be considered an "officer, director, managing agent, or employee" of the People, section 2025, subdivision (h) required Cole to serve them with subpoenas under section 2020 to compel attendance of witnesses from those agencies, and for them to produce any documents at such depositions. The court erred as a matter of law in denying the People's motion to quash deposition notices that requested that they produce for deposition persons most knowledgeable from those agencies, and documents to accompany the deponents.[5]

The more challenging question is whether it was proper for Cole to demand, through requests for production of documents under section 2031, that the People produce items in the possession of state agencies that are not

---

[4] The DCA was a defendant to the defendants' cross-complaint. However, as we described above, the court dismissed them from the litigation by granting the Attorney General and the Director's demurrer to the cross-complaint.

[5] In fact, the defendants do not even address the language of section 2025, subdivision (h), apparently conceding that deposition notices served on the People were not sufficient to compel the attendance of nonparty state agency witnesses.

parties to this litigation. We could locate no published decision in California addressing this precise issue. However, a published case involving *criminal* discovery authored by this court has held that such discovery requests are not proper, unless the propounding party is requesting documents related to an investigation by that state agency related to the criminal prosecution at issue.

In *People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1309 [96 Cal.Rptr.2d 264] (*Barrett*), the defendant was charged with murdering his cellmate at Calipatria State Prison. He had requested discovery from the People of various records maintained by a state agency, the California Department of Corrections (CDC), including logs from the administrative segregation unit and incident logs. (*Id.* at pp. 1309–1310.) We held that the prosecution had no duty to produce most of these records because in maintaining them the CDC was not acting as an investigating agency. (*Id.* at pp. 1317–1320.)

As the court in *Barrett* explained: "In addition to being an investigatory agency in the homicide prosecution, CDC first and foremost supervises, manages and controls the state prisons . . . . [Citations.] CDC is a distinct and separate governmental entity from the District Attorney. . . . Thus, for our purposes, CDC has a hybrid status: part investigatory agency, and part third party. [¶] With respect to CDC's role as an investigatory agency, [defendant] can only compel discovery of materials generated or maintained by CDC relating to its investigation of the . . . homicide . . . . [Citation.] . . . [¶] However, the bulk of the . . . CDC documents . . . , most of which predate the homicide, are records kept by CDC in the course of running the prison. [Citation.] [Defendant] cannot rely on [Penal Code section 1054 et seq.] for discovery of materials from CDC that are strictly related to its operation of Calipatria State Prison, that is, materials CDC generated when it was not acting as part of the prosecution team. To the extent [defendant] is seeking records that CDC maintains in the regular course of running Calipatria State Prison, [defendant] is trying to obtain material from a third party. [Citation.]" (*Barrett, supra,* 80 Cal.App.4th at pp. 1317–1318, fns. omitted.) "We conclude that to obtain materials from CDC in its capacity as the administrator of the state prison system, [defendant] must resort to a subpoena duces tecum." (*Id.* at p. 1318.) The court further concluded that "information possessed by an agency that has no connection to the investigation or prosecution of the criminal charge against the defendant is not possessed by the prosecution team . . . ." (*Id.* at p. 1315; accord, *United States v. Aichele* (9th Cir. 1991) 941 F.2d 761, 764 [federal prosecutor not in possession or control over witness's CDC file and not obligated "to turn over materials not under its control"].)

Cole argues that *Barrett* is not controlling because it involved criminal, not civil discovery. It is true that the criminal discovery statutes differ from civil

discovery statutes. However, the conclusion reached in *Barrett* does not depend upon anything unique to criminal discovery. Rather, we were merely determining in *Barrett*, as we are again doing in this appeal, whether a nonparty state agency is considered a third party where the People are the plaintiff in an action, requiring a defendant in such a case to serve it with a subpoena to obtain documents. We find the analysis in *Barnett* persuasive and also conclude that the People, by prosecuting this action, are not deemed to have possession, custody or control over documents of any state agency. Such documents must be obtained by a subpoena.

Cole points out that the DCA investigated Cole for this case. Consistent with *Barrett*, to the extent that any state agencies had a role in investigating Cole as a part of this action, documents *related to that investigation* may be sought directly from the People. However, as the *Barrett* court noted, state agencies, in the ordinary course of their duties, are distinct and separate governmental entities, third parties under the discovery statutes that can be compelled to produce documents only upon a subpoena. (*Barrett, supra,* 80 Cal.App.4th at pp. 1317–1318.)

Cole cites to several cases for the proposition that state agencies are not separate entities from the state, but rather its agents, and that therefore the People should be required to produce documents in the agencies' possession. However, these cases are not on point. One case, *People v. Department of Housing & Community Dev.* (1975) 45 Cal.App.3d 185, 197 [119 Cal.Rptr. 266], merely held that a state agency "is an administrative segment of the state government." Similarly, Cole cites *Trinkle v. California State Lottery* (1999) 71 Cal.App.4th 1198, 1203 [84 Cal.Rptr.2d 496], which merely described a state agency as an "entity representing the people." They cite *Community Memorial Hospital v. County of Ventura* (1996) 50 Cal.App.4th 199, 209 [56 Cal.Rptr.2d 732] for its statement that "a county . . . is a subdivision of the state [government]." None of the cases, however, hold that when the People are parties to a civil action, they are deemed to be in possession, custody or control of the documents of all state agencies, making them obligated to produce any documents from those agencies that an opposing party requests.

█ Indeed, the very nature of state agencies supports a finding that the People should not be deemed to have possession, custody or control over their documents. Each agency or department of the state is established as a separate entity, under various state laws or constitutional provisions. (Bus. & Prof. Code, § 100 [establishing Dept. Consumer Affairs]; Cal. Const., art. VII, § 2 [establishing State Personnel Bd.].) For example, Business and Professions Code section 108 provides that the various boards under the Department of Consumer Affairs have a separate existence:

"Each of the boards comprising the department exists as a separate unit, and has the functions of setting standards, holding meetings, and setting dates thereof, preparing and conducting examinations, passing upon applicants, conducting investigations of violations of laws under its jurisdiction, issuing citations and holding hearings for the revocation of licenses, and the imposing of penalties following such hearings, in so far as these powers are given by statute to each respective board."

Business and Professions Code section 109 further provides in part that "[t]he decisions of any of the boards comprising the department with respect to setting standards, conducting examinations, passing candidates, and revoking licenses, are not subject to review by the director, but are final within the limits provided by this code which are applicable to the particular board."

■ Moreover, agencies have the power to investigate and bring actions on their own:

"The head of each department may make investigations and prosecute actions concerning: [¶] (a) All matters relating to the business activities and subjects under the jurisdiction of the department. [¶] (b) Violations of any law or rule or order of the department. [¶] (c) Such other matters as may be provided by law." (Gov. Code, § 11180.)

■ Agencies of the state are responsible for maintaining their own records. (Gov. Code, § 14750 [head of agency within Dept. Gen. Services responsible for establishing program for management of records]; Bus. & Prof. Code, § 800 [centralized file system to be maintained by agencies].)

Indeed, agencies' interests are often in conflict and one may sue another. (See *Westly v. Board of Administration* (2003) 105 Cal.App.4th 1095 [130 Cal.Rptr.2d 149] [controller as head of agency had authority to sue state retirement board, another state agency].) Because of their separate organization, duties and powers, we conclude that section 2031 did not envision the People as being in possession, custody or control of documents created or possessed by nonparty state agencies.

Public policy also dictates that Cole be required to serve subpoenas directly upon state agencies to obtain their documents or witnesses. It would be unduly burdensome if any time the People are a party to litigation they are required to search for documents from any and all state agencies that the propounding party demands. Further, requiring Cole to seek documents and witnesses directly from the involved state agencies will allow those agencies to protect their particular interests, of which the People may have no

knowledge, expertise or understanding. There is no burden, on the other hand, in requiring Cole to serve subpoenas on the state agencies from which it wishes to obtain records.

██ In sum, we conclude that to obtain documents and witnesses from state agencies, other than documents reflecting an agency's investigation related to this litigation, Cole was required to serve subpoenas directly upon the agencies from which they sought this information. Accordingly, the court erred in ordering the People to produce documents from nonparty state agencies and in denying the People's motion to quash the deposition notices seeking witnesses and documents from those agencies.

### C. *Protective Order in Federal Litigation*

As described above, in opposition to Cole's second motion to compel, the People argued that they were not obligated to turn over documents from the NAOO case because (1) the parties there were different; (2) the documents were from nonparty state agencies; and (3) they were subject to a protective order and privileges raised in that action. At the hearing on Cole's motion, the People requested that if the court ordered documents produced from that litigation, they should be subject to a protective order similar to that entered into by the parties in that action. The court denied the request to consider the protective order, believing that the request made by the People was not properly before the court. As detailed above, the court then ordered the People to deliver to Cole all documents produced in the NAOO litigation, including documents from the DCA, Medical Board and Board of Optometry, whether or not they were designated as privileged or confidential.

██ The People assert that even if it was proper for the court to order production of the NAOO documents, it should have been subject to a protective order under which the documents were produced in that action, in order to protect confidential or privileged documents related to the parties or third persons. As a preliminary matter, as we have concluded that the People have not waived any privileges and that it was improper for the court to order the People to produce documents from nonparty state agencies, that portion of the court's order compelling production from the NAOO litigation was erroneous and it is set aside. Therefore, at this time, any issue as to a protective order is moot. However, because of the rancorous nature of the parties' discovery disputes, and the People's expressed desire to produce to Cole documents produced in the NAOO case so long as an appropriate protective order is in place, we remand this matter to the trial court to determine whether a protective order should be in place in this action with respect to the NAOO documents, its scope and terms.

## DISPOSITION

Let a peremptory writ of mandate issue compelling respondent court to set aside its orders of April 2 and April 12, 2004, to the extent that they overruled the People's objections on the grounds of privilege to the discovery propounded by Cole and that they compelled production from nonparty state agencies. The court is to make a new and different order directing the People to (1) serve further responses to the production requests which include a particularized identification of all documents to which any privilege is asserted and the facts justifying assertion of the privileges, or (2) serve a further privilege log including the same information. The court is further ordered to conduct a hearing on the People's request that a protective order be entered into with respect to documents produced in the NAOO case that were subject to a protective order in that case. The temporary stay order is to remain in effect pending finality of this opinion. Petitioner is to recover its costs in this proceeding. (Cal. Rules of Court, rule 56.4.)

Huffman, Acting P. J., and Aaron, J., concurred.