Filed 3/9/15  Carian v. Cal. Dept. of Fish and Wildlife CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BLAINE CARIAN, | D066683 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. INC1203600) |
| CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Riverside County, Harold W. Hopp, Judge.  Affirmed.

Redwine and Sherrill, and M. Eli Underwood for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Robert W. Byrne, Assistant Attorney General, Eric M. Katz, Ross H. Hirsch and Diana Vernazza, Deputy Attorneys General, for Defendants and Respondents.

Blaine Carian appeals a postjudgment order denying his motion for attorney fees pursuant to Code of Civil Procedure[1] section 1021.5. The trial court found he did not make a reasonable attempt to settle his dispute before filing the instant action against the State of California Department of Fish and Wildlife (Department) and Kimberly Nicol, a Department manager (together Defendants). On appeal, Carian contends the trial court erred in denying his motion for attorney fees because he gave the Department notice before filing his action, any attempt to settle the dispute would have been futile, and he satisfied all of the other requirements for an award of attorney fees under section 1021.5.

FACTUAL AND PROCEDURAL BACKGROUND

In 1968, the Legislature enacted a statutory scheme to protect the State's ecological reserves to, in turn, protect threatened or endangered native plants, wildlife, or aquatic organisms. (Fish & Game Code, §§ 1580 et seq.) Under Fish and Game Code section 1580, the Fish and Game Commission (Commission) has the authority to "adopt regulations for the occupation, utilization, operation, protection, enhancement, maintenance, and administration of [the State's] ecological reserves." Except as the Commission's regulations allow, it is unlawful for persons to enter upon any ecological reserve.[2] (Fish & Game Code, § 1583.)

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Fish and Game Code section 1583 provides: "Except in accordance with the regulations of the [C]ommission it is unlawful to enter upon any ecological reserves . . . ."

Apparently in or about 1975, the Commission adopted a regulation that designated Magnesia Spring Ecological Reserve (Reserve) in Riverside County as an ecological reserve. (Cal. Code Regs., tit. 14, § 630(b)(76).) That regulation states in part: "Visitor uses are dependent upon the provisions of applicable laws and upon a determination by the [C]ommission that opening an area to such visitor use is compatible with the purposes of the property. Visitor use is subject to the regulations below, in sections 550 and 550.5 of these regulations, as well as any other [C]ommission regulations that may apply." (Cal. Code Regs., tit. 14, § 630(a).) That regulation further provides that the Department owns and operates the Reserve and other ecological reserves listed in the regulation. (Cal. Code Regs., tit. 14, § 630(b).) In or about 1976, the Department apparently adopted a wildlife management plan for the Reserve, which provided that "[e]nforcement of laws pertaining to [the Reserve] should be the responsibility of the Department." In or about 2007, the Department apparently adopted a multi-species habitat conservation plan, which stated that "[u]se of trails on [the Department's] land is subject to [California Code of Regulations] Title 14." It also contemplated that the "Bump and Grind" portion (Trail) of the Mirage Trail would be decommissioned and removed by the Department in the future.

In January 2012, Assembly Bill No. 284 was introduced to enact a statute allowing access to the Trail. That bill apparently expired, or "died," pursuant to the California Constitution for lack of timely passage. (Cal. Const., art. IV, § 10(c).) In March 2012, a new bill, Assembly Bill No. 880, was introduced that contained the same language as the prior bill to enact a statute (i.e., Fish & Game Code, § 1587) allowing access to the Trail.

3

Assembly Bill No. 880 was ultimately passed, enacting former Fish and Game Code section 1587,[3] effective as of January 2013, which provided:

> "(a) The Mirage Trail within the [Reserve] shall be open nine months of the year to recreational hiking, if the[C]ommission determines that the following conditions are met: [¶] . . . [¶]

> "(b) The [C]ommission shall determine seasonal openings and closures of the trail that will not conflict with the use of the area by Peninsular bighorn sheep, consistent with subdivision (a). . . ." (Former Fish & Game Code, § 1587, italics added.)

On May 15, 2012, Carian filed the instant petition and complaint against Defendants, alleging causes of action for a writ of mandate directing the Department to reopen the Trail, taxpayer relief, quiet title to public easement, and declaratory relief. Defendants demurred to the petition and complaint. The trial court issued a tentative ruling sustaining Defendants' demurrer. On August 16, the trial court heard arguments of counsel and initially took the matter under submission. However, on September 11, the court vacated its order taking the matter under submission and set a further hearing on the demurrer, stating that if the Governor signed Assembly Bill No. 880, which had recently been passed by both houses of the Legislature, the new law would have a significant effect on the demurrer. On September 25, the Governor signed Assembly Bill No. 880, which added former section 1587 to the Fish and Game Code. (Stats. 2012, ch. 527, § 1.) At the October 15 hearing on Defendants' demurrer, Carian, in effect, conceded the new

---

3    Fish and Game Code section 1587 was amended in 2013. (Stats. 2013, ch. 76 (A.B. 383), § 63; Stats. 2013, ch. 594 (A.B. 1097), § 1.)

4

statute made his lawsuit moot. The court sustained Defendants' demurrer without leave to amend.

In January 2013, Carian filed a motion for attorney fees under section 1021.5. In seeking an award of $100,000 in attorney fees against Defendants, Carian argued that his lawsuit was necessary to enforce an important right affecting the public interest and conferred a significant benefit on the general public by causing the State to open the Trail. In support of his motion, he submitted a declaration of Eli Underwood, his counsel, in which Underwood stated that "[b]ecause of this suit, the State of California opened the trail." Carian also submitted a declaration of State Assemblyman Brian Nestande, in which Nestande stated that Carian's lawsuit "was a material factor, demonstrably influential, a substantial contribution, and one of the catalysts in helping to get [Assembly Bill No.] 880 codified into law because it helped to focus the Legislature's attention on whether the trail needed to be closed the entire year or whether it could only be closed a few months out of the year." Carian also submitted a similar declaration of State Assemblyman V. Manuel Perez containing a statement identical to Nestande's statement quoted above.

Defendants opposed Carian's section 1021.5 motion for attorney fees, arguing Carian was not a "successful party" under the catalyst theory. Citing *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553 (*Graham*), Defendants argued Carian had not made a reasonable attempt to settle the dispute before filing his lawsuit and therefore could not recover attorney fees under section 1021.5. Defendants argued Carian did not make any reasonable settlement attempt because he "never pursued the established

5

administrative remedy to resolve his grievance via the Commission (Fish & [Game] Code, § 1583) . . . ."

In reply, Carian argued that he made a reasonable attempt to settle the dispute prior to filing his lawsuit, citing his October 2011 meeting with Nicol regarding reopening the Trail and his February 2012 notice to the Attorney General of his intent to seek to reopen the Trail. In support of his reply, Carian submitted his own declaration in which he stated he met with Nicol on October 11, 2011, and requested the top portion of the Trail be reopened to the public. He further stated that after Nicol initially agreed to conditionally reopen the Trail, she purportedly withdrew those conditions in an April 2012 letter. Carian also submitted Underwood's reply declaration in which he stated that on or about February 12, 2012, he conveyed to a deputy attorney general Carian's proposal to settle his separate Public Records Act lawsuit against the Department. That proposal included terms to reopen the Trail. Underwood stated that when Carian's proposal was rejected by the deputy attorney general, Underwood told him the issue would be dealt with in a separate suit.

On May 28, 2013, the trial court issued an order denying Carian's motion for attorney fees under section 1021.5. The court found Carian "did not make a reasonable settlement effort before bringing this lawsuit" and referred to its reasons set forth in its attached April 16 ruling, which stated in part:

> "More persuasive is [Defendants'] argument that [Carian] failed to make a reasonable settlement attempt before bringing the action, something that [Carian] argues he did by meeting with respondent Nicol and informing her of his interest in reopening the trail and informing the attorney general before filing this action. [Carian]

6

accurately quotes a portion of the *Graham* opinion stating that at a minimum a plaintiff must notify the defendant of his or her grievances and proposed remedies and give the defendant the opportunity to meet the demands within a reasonable time. [Citation.]  As the Supreme Court stated, however, 'what constitutes a "reasonable" time will depend on the context.'  [Citation.]  As do, in this Court's view, what are reasonable settlement efforts.  While in some circumstances, such as where a violation of the petitioner's rights and the remedy is clear, simple notification and explanation of the requested remedy might be sufficient to constitute a reasonable settlement effort.  But often this will only be a starting point for reasonable settlement efforts.  Indeed, many cases, particularly *cases such as this one where the factual background and potential settlement are complicated, require more*.

"[Defendants] contend[] that [Carian] did not pursue 'an established administrative remedy' in an effort to resolve his grievances through the Fish and Game Commission.  As [Defendants] point[] out, a legislative analysis of [Assembly Bill No.] 880 includes the comment that *the legislation might not have been necessary had someone*—such as [Carian]—'*asked the [C]ommission for its assistance on this matter*, which seems to be a significant omission by the proponents.'  [Citation.]  The Supreme Court stated that the purpose of requiring reasonable settlement efforts is to ensure that subsequent litigation is truly necessary: 'Awarding attorney fees for litigation when the rights could have been vindicated by reasonable efforts short of litigation does not advance that objective and encourages lawsuits that are more opportunistic than authentically for the public good.'  [Citation.]

"[Carian] does not address the substance of this argument, instead arguing [Fish and Game Code section 1583] is entitled 'trespass' and does not prescribe an administrative remedy.

"[Carian] offers *no evidence that it would have been futile* to have made further settlement efforts, in particular, *to have gone to the Fish and Game Commission for assistance* or that such efforts would be, in our Supreme Court's words, 'lengthy pre-litigation negotiations.'  This Court certainly does not find that in every instance a plaintiff must go through a government agency's preferred procedures to meet the requirement that it make a reasonable settlement attempt.  But *on the record before it*, and given that [Carian] failed to even argue that it would have been futile or

7

> excessively time consuming to approach the Commission as suggested in the legislative analysis, *the Court finds* [Carian] *failed to make a reasonable settlement effort before bringing this lawsuit and therefore is not entitled to recover attorney's fees under section 1021.5.*" (Italics added, fn. omitted.)

Because the court decided the motion on that ground, it declined to address the remaining issues. Carian timely filed a notice of appeal.

## DISCUSSION

### I

### *Section 1021.5 and* Graham's *Catalyst Theory*

Under section 1021.5, a trial court may award attorney fees to a "successful party" in an action that has "resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ." The courts have taken a "broad, pragmatic view of what constitutes a 'successful party.' " (*Graham*, *supra*, 34 Cal.4th at p. 565.) Section 1021.5 attorney fees may be awarded "even when plaintiff's legal action does not result in a favorable final judgment" if there is "a causal connection between the plaintiffs' lawsuit and the relief obtained." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1290-1291.) The catalyst theory looks to the "impact of the action, not the manner of its resolution." (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685.) "Under the catalyst theory, attorney fees may be awarded even when litigation does not result in a judicial resolution if the defendant

8

changes its behavior substantially because of, and in the manner sought by, the litigation." (*Graham*, at p. 560.) Furthermore, "to be eligible for attorney fees under section 1021.5, a plaintiff must not only be a catalyst to defendant's changed behavior, but the lawsuit must have some merit . . . and the plaintiff must have engaged in *a reasonable attempt to settle its dispute* with the defendant prior to litigation." (*Id*. at pp. 560-561, italics added.)

*Graham*'s requirement that a plaintiff make a reasonable attempt to settle the dispute "is fully consistent with the basic objectives behind section 1021.5," including its express requirement that the private enforcement be necessary. (*Graham*, *supra*, 34 Cal.4th at p. 577.) *Graham* stated:

> "Awarding attorney fees for litigation when those rights could have been vindicated by reasonable efforts short of litigation does not advance that objective and encourages lawsuits that are more opportunistic than authentically for the public good. Lengthy prelitigation negotiations are not required, nor is it necessary that the settlement demand be made by counsel, but a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time. [Citations.] What constitutes a 'reasonable' time will depend on the context." (*Graham*, *supra*, 34 Cal.4th at p. 577.)

"[S]ettlement efforts (or their absence) are relevant *in every case* to show that 'the *necessity* and financial burden *of private enforcement* . . . are such as to make the award appropriate . . . . ' [Citation.] In assessing such information in a particular case to determine whether private enforcement was sufficiently necessary to justify an award of fees, the trial court exercises its equitable discretion in light of all the relevant circumstances." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 258-259, fn.

9

omitted, italics added by *Vasquez*.)  However, if the trial court finds that attempts to settle the dispute by the plaintiff would have been futile, the plaintiff may not be barred from recovering section 1021.5 attorney fees because of the lack of a settlement attempt. (*Cates v. Chiang* (2013) 213 Cal.App.4th 791, 816-817.)

On appeal, we apply the abuse of discretion standard in reviewing a trial court's decision whether to award attorney fees under section 1021.5.  (*Graham*, *supra*, 34 Cal.4th at p. 578.)  In *Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 620, we stated:

> "Whether the applicant for attorney fees has proved section 1021.5's elements is a matter primarily vested in the trial court.  [Citation.] 'We review the entire record, attentive to the trial court's stated reasons in denying the fees and to whether it applied the proper standards of law in reaching its decision.  [Citation.]  We will reverse the trial court's decision only if there has been a prejudicial abuse of discretion, i.e., when there has been a manifest miscarriage of justice or " 'where no reasonable basis for the action is shown.' " ' "

A trial court abuses its discretion when it exceeds the bounds of reason given all of the circumstances in the case.  (*Wal-Mart,* at p. 625; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)  Furthermore, in applying the abuse of discretion standard of review, we give considerable deference to the trial court, including deference to the trial court's reasonable inferences when two or more inferences can reasonably be drawn from the record.  (*In re Woodham* (2001) 95 Cal.App.4th 438, 443.)

10

## II

### *Carian's Attempt to Settle the Dispute*

Carian contends the trial court erred in denying his motion for attorney fees because he gave the Department notice of the dispute before filing his action, any attempt to settle the dispute would have been futile, and he satisfied all of the other requirements for an award of attorney fees under section 1021.5.

### A

At the outset, Carian asserts we should apply the de novo, or independent, standard of review rather than the abuse of discretion standard of review because the facts are undisputed. We disagree. As discussed above, it is well established that the abuse of discretion standard applies in reviewing a trial court's decision whether to award a plaintiff section 1021.5 attorney fees. (*Graham*, *supra*, 34 Cal.4th at p. 578; *Wal-Mart Real Estate Business Trust v. City Council of San Marcos*, *supra*, 132 Cal.App.4th at p. 620.) Even assuming the underlying facts are undisputed, it remains the trial court's duty to consider those facts and the circumstances of the case and exercise its discretion in determining whether the requirements were satisfied for an award of attorney fees under section 1021.5, and we can reverse the court's determination only if there is no reasonable basis for it. (*Wal-Mart*, at p. 620.) Furthermore, in reviewing the trial court's decision, we defer to its reasonable inferences when two or more inferences can reasonably be drawn from the undisputed facts. (*In re Woodham*, *supra*, 95 Cal.App.4th at p. 443.)

B

Carian asserts the trial court erred by denying his motion for section 1021.5 attorney fees based on its finding he did not make a reasonable attempt to settle the dispute before filing his action against Defendants.[4]  He argues his pre-lawsuit notice to Defendants met *Graham*'s requirements for making a reasonable attempt to settle the dispute as a matter of law.  Based on our reading of *Graham*, we conclude Carian misinterprets and/or misapplies its standard for reasonable attempts to settle under section 1021.5.  In describing that requirement, *Graham* stated in part: "[A] plaintiff must *at least notify* the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time."  (*Graham*, *supra*, 34 Cal.4th at p. 577, italics added.)  However, we, like the trial court, conclude the qualifying language "at least" does not equate with "at most," as Carian apparently suggests.  Alternatively stated, we disagree with Carian's apparent assertion that a plaintiff *necessarily* makes a reasonable attempt to settle when he or she simply notifies the defendant of the grievance and proposed remedies, and that nothing more is required to be done by the plaintiff.  On the contrary, we believe the trial court correctly viewed *Graham*'s statement as a "starting point" in its determination of whether Carian made a reasonable attempt to settle the dispute in the circumstances of this case.  In *Vasquez*, the

---

4       By arguing he satisfied the requirements for section 1021.5 attorney fees under the catalyst theory, Carian apparently concedes, as he must, that he was not the prevailing party in his action against Defendants.  As noted above, the trial court sustained Defendants' demurrer to Carian's complaint without leave to amend.

court expressly stated that in determining whether private enforcement was sufficiently necessary to justify an award of section 1021.5 attorney fees, "the trial court exercises its equitable discretion in light of all of the relevant circumstances." (*Vasquez v. State of California*, *supra*, 45 Cal.4th at pp. 258-259, fn. omitted.) In exercising its discretion whether to award a plaintiff section 1021.5 attorney fees, a trial court must consider not simply whether the plaintiff notified the defendant of the dispute before filing the lawsuit, but also must consider all of the relevant circumstances in the case in determining whether the plaintiff made a reasonable attempt to settle the dispute before filing the lawsuit. (*Id*. at pp. 258-259; *Graham*, at pp. 560-561, 577.) Therefore, contrary to Carian's assertion, we conclude the trial court applied the correct legal standard in determining whether he made a reasonable attempt to settle the dispute before filing his lawsuit against Defendants.

We also reject Carian's assertion the trial court erred by finding he did not make a reasonable attempt to settle the dispute in the circumstances of this case. As discussed above, the record shows Carian met with Nicol in October 2011 regarding reopening the Trail; his counsel met in February 2012 with a deputy attorney general who rejected Carian's request to reopen the Trail and was then informed Carian would deal with it in a lawsuit separate from his pending public records lawsuit. For purposes of this opinion, we assume arguendo that Defendants had, at least, some notice of Carian's dispute regarding reopening the Trail before he filed the instant action. Contrary to Carian's assertion, his notice to Defendants did not also constitute notice to the Commission and/or the State for purposes of section 1021.5 attorney fees. As Defendants assert,

13

California's state agencies are distinct and separate governmental entities and therefore notice to one does not constitute notice to all. (See, e.g., *Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 48-49; *People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1076-1080; *People v. Superior Court* (*Barrett*) (2000) 80 Cal.App.4th 1305, 1317.)

However, as stated above, mere notice to a potential defendant is not necessarily sufficient to meet *Graham*'s requirement for a reasonable attempt to settle a dispute before filing a lawsuit. In deciding that issue, the trial court properly considered all of the circumstances in this case, including whether Carian's lawsuit was necessary to obtain the changes or relief he sought (i.e., reopening of the Trail). One of the circumstances the trial court considered was whether the Department was the only party Carian should have contacted and made his request for reopening the Trail. The court concluded Carian should also have contacted the *Commission*, which has the ultimate authority under applicable statutes to allow or disallow access to the Trail, and not just the Department, which merely enforces the regulations the Commission adopts. (Fish & Game Code, §§ 1580, 1583.) Under that statutory scheme, the *Commission* adopted a regulation that designated the Reserve (which includes the Trail) as an ecological reserve. (Cal. Code Regs., tit. 14, § 630(b)(76).) That regulation states in part: "Visitor uses are dependent upon the provisions of applicable laws and upon a determination by *the* [*C*]*ommission* that opening an area to such visitor use is compatible with the purposes of the property. Visitor use is subject to the regulations below, in sections 550 and 550.5 of these

regulations, as well as any other [*C*]*ommission* regulations that may apply." (Cal. Code Regs., tit. 14, § 630(a), italics added.)

Based on the statutory and regulatory scheme for California's ecological reserves, including the Reserve and the Trail, we conclude the trial court properly determined Carian should have contacted the *Commission* and requested that it adopt regulations allowing access to the Trail before he filed the instant action against the Department and Nicol. The trial court could have reasonably concluded that had Carian contacted the Commission before filing his action, then private enforcement (i.e., his action against Defendants) may not have been necessary to obtain the changes he sought (i.e., reopening of the Trail), and therefore Carian did not meet the requirements for an award of section 1021.5 attorney fees. (§ 1021.5; *Graham*, *supra*, 34 Cal.4th at p. 577; *Vasquez v. State of California*, *supra*, 45 Cal.4th at pp. 258-259.) Contrary to Carian's assertion, the trial court reasonably cited as support for its conclusion the legislative analysis of Assembly Bill No. 880 that indicated the legislation might not have been necessary had someone (e.g., Carian) contacted the *Commission* about the issue.

We reject Carian's argument that he did not have to contact the Commission regarding the dispute because Nicol (or other persons with or on behalf of the Department) purportedly asserted the Department had the authority to reopen the Trail. The trial court could have concluded that a reasonable plaintiff's attorney would have researched the statutory and regulatory scheme for ecological reserves before filing a lawsuit to reopen the Trail and, in so doing, presumably would have learned the Commission, and not the Department, has the authority to adopt regulations to allow or

15

disallow access to the Trail. Therefore, the court could have concluded Carian unreasonably relied on the purported representations regarding the Department's authority. Furthermore, even assuming the Department possesses certain discretion to allow access to the Trail, that authority would not necessarily preclude other government agencies or entities (e.g., the Commission) from having concurrent authority, and even greater authority, to allow access to the Trail. Therefore, the trial court properly concluded Carian did not make a reasonable attempt to settle the dispute because he did not contact the Commission and request specific changes be made regarding access to the Trail before filing the instant action. None of the cases cited by Carian (e.g., *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169; *Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810) are apposite to this case or otherwise persuade us to reach a contrary conclusion.

C

Finally, Carian asserts the trial court erred by finding, in effect, he waived any argument that it was futile for him to attempt to settle the dispute by contacting the Commission because the Commission's response would have been the same as the Department's response (i.e., rejection of his request). In denying Carian's section 1021.5 attorney fee motion, the trial court found in part: "[Carian] offers *no evidence that it would have been futile* to have made further settlement efforts, in particular, *to have gone to the Fish and Game Commission for assistance.*" (Italics added.) As Defendants assert, Carian waived any futility argument by not raising it below. (*Resolution Trust Corp. v. Winslow* (1992) 9 Cal.App.4th 1799, 1810.) In any event, even had he raised that issue

16

below, he did not, as the trial court found, submit any *evidence* below showing that any notice or other contact to the Commission would have been futile. Carian's arguments on appeal that any notice or contact to the Commission would have been futile are speculative and not supported by any evidence in the record. We conclude the trial court properly found Carian, in effect, waived any futility argument and/or did not carry his burden to prove any attempt to settle the dispute by contacting the Commission would have been futile. *Cates v. Chiang*, *supra*, 213 Cal.App.4th 791, cited by Carian, is factually inapposite to this case and does not persuade us to reach a contrary conclusion.

D

Because we conclude the trial court properly found Carian did not make a reasonable attempt to settle the dispute before filing his action against Defendants and therefore did not meet that requirement for an award of section 1021.5 attorney fees, we need not, and do not, address his argument that he satisfied all of the other requirements for an award of attorney fees under section 1021.5.

DISPOSITION

The order is affirmed.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

HALLER, J.

17