[No. B187258. Second Dist., Div. Five. Mar. 8, 2007.]

SINAIKO HEALTHCARE CONSULTING, INC., Plaintiff and Respondent,
v.
PACIFIC HEALTHCARE CONSULTANTS et al., Defendants;
STEVEN M. KLUGMAN, Objector and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion, part D.

392

## COUNSEL

Law Offices of Patricia A. Painter, Patricia A. Painter; Law Offices of Steven Mark Klugman and Steven M. Klugman for Objector and Appellant.

Fisher, Sparks, Grayson & Wolfe, David R. Fisher; Greines, Martin, Stein & Richland and Robert A. Olson for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—This appeal[1] from an order imposing a monetary discovery sanction of $8,786.36 raises the issue of whether, under the California Civil Discovery Act of 2004 (Code Civ. Proc., § 2016.010 et seq.),[2] the trial court has the authority to hear a motion to compel responses to written interrogatories

---

[1] Defendants Bryan J. Kirchwehm (Kirchwehm), Zeppelin Corporation (Zeppelin) and Pacific Healthcare Consultants (Pacific) (collectively the defendants) dismissed their appeal after oral argument. Attorney Steven M. Klugman (Klugman), one of the persons against whom the trial court awarded the monetary sanction at issue, has not dismissed his appeal. An attorney against whom a monetary sanction has been awarded has standing to appeal. (*Imuta v. Nakano* (1991) 233 Cal.App.3d 1570, 1585–1586 [285 Cal.Rptr. 681].) Klugman asserts that the issues raised by his appeal are not moot. We have been presented with no motion to dismiss the appeal as to Klugman and no evidence that the issues raised by Klugman's appeal are moot. (See Cal. Rules of Court, rule 8.54(a)(2) [motion "based on matters outside the record" must be supported "by declarations or other supporting evidence"]; see also *In re Matthew C.* (1993) 6 Cal.4th 386, 394 [24 Cal.Rptr.2d 765, 862 P.2d 765] [" 'when the propriety of an appeal is not free from dubiety, the better practice is to . . . permit the appeal to be determined on the merits' "], quoting *Bailey v. Fosca Oil Co., Ltd.* (1962) 211 Cal.App.2d 307, 309 [27 Cal.Rptr. 454].) Accordingly, Klugman's appeal remains. Our resolution of the issues on this appeal concerns only Klugman.

[2] All statutory references are to the Code of Civil Procedure. The Civil Discovery Act of 2004 (the 2004 Act or the Civil Discovery Act) became effective July 1, 2005 (§ 2016.010), after the discovery at issue here was served. The 2004 Act reorganized and renumbered the provisions of the Civil Discovery Act of 1986, but the 2004 Act was not intended to effect any substantive changes in the law. (Stats. 2004, ch. 182, § 61 ["Nothing in this act is intended to

under section 2030.290 when the party on whom the interrogatories were served fails to serve any response within the required time, thereby waiving all objections, but after the motion is served, provides an untimely response that the propounding party deems inadequate. In the published portion of this opinion, we hold that the service of an untimely interrogatory response, which may or may not reflect a good faith effort to comply with the party's discovery obligations, does not divest the trial court of authority to hear and grant a motion to compel responses under section 2030.290, subdivision (b). Whether the trial court should proceed with a motion to compel responses under section 2030.290 when there has been an untimely interrogatory response is within the sound discretion of the trial court.

## BACKGROUND

In December 2004, plaintiff and respondent Sinaiko Healthcare Consulting, Inc. (Sinaiko), sued defendants[3] for breach of contract, unfair competition, misappropriation of trade secrets, interference with prospective economic advantage and interference with contractual relations. Sinaiko alleged that it and its predecessor had engaged Kirchwehm, first as an employee and then (through Zeppelin and Pacific) as an independent contractor, to provide financial advisory services to Sinaiko's clients in the health care industry. Sinaiko alleged that, as a result, Kirchwehm had access to Sinaiko's proprietary client database; that after Kirchwehm ended his relationship with Sinaiko in July 2004, Sinaiko discovered that Kirchwehm had solicited at least one of its clients with which Kirchwehm had no previous contact; and that Kirchwehm had solicited other Sinaiko clients utilizing confidential information improperly obtained from Sinaiko.

Sinaiko's complaint included eight causes of action, one of which alleged a breach of contract. In its first cause of action, entitled "Breach of Oral Contract," Sinaiko alleged that, "In or about August, 2002, the parties orally agreed that defendants, and each of them, would provide advisory and financial services to SINAIKO's clients for which SINAIKO would compensate defendants. Defendants agreed that they would provide SINAIKO with the underlying materials supporting the opinion letters prepared upon SINAIKO's request, due to the fact that said materials were at all times the property of SINAIKO." Sinaiko further alleged that, "Beginning in or about August, 2002, and continuing to the present, defendants, and each of them, breached the above-referenced oral agreement . . . ."

substantively change the law of civil discovery"].) For ease of reference, and because the parties generally have done so, we refer to the relevant statutory provisions as renumbered and reorganized by the 2004 Act.

[3] According to the certificate of interested parties filed with this court, Kirchwehm is the majority stockholder of Zeppelin, and Zeppelin is the "proprietor" of Pacific.

On February 14, 2005,[4] Sinaiko served on each of Kirchwehm, Zeppelin and Pacific one set of official form written interrogatories[5] (the interrogatories), pursuant to section 2030.020, subdivision (a), and one set of inspection demands to produce and permit the inspection and copying of documents (the document requests), pursuant to section 2031.020, subdivision (a). Among the interrogatories propounded by Sinaiko were form interrogatories 50.1 through 50.6. Form interrogatory 50.1 requested that, "[f]or each agreement alleged in the pleadings," defendants (a) identify each document that was part of the agreement; (b) state each part of the agreement not in writing; (c) identify all documents that evidenced any part of the agreement not in writing; (d) identify all documents that were part of any modification to the agreement; (e) state each modification not in writing; and (f) identify all documents that evidenced any modification not in writing. Form interrogatory 50.1 also requested that defendants provide the name, address and telephone number of each person who either possessed the documents identified in defendants' response, or who had agreed to any of the oral agreements or oral modifications identified in defendants' response.

Interrogatories 50.2 through 50.6 provided as follows:

"50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

"50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

"50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

"50.5 Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

"50.6 Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous."

Sinaiko's document requests sought 23 categories of documents, including the documents identified in defendants' response to form interrogatory 50.1,

---

[4] All date references hereafter are to 2005.

[5] Judicial Council Forms, former form FI-120. (See §§ 2033.710–2033.740.)

documents pertaining to work that defendants had done for clients on Sinaiko's behalf, and documents pertaining to "advisory or financial services" provided by defendants "independent of" their relationship with Sinaiko. Sinaiko served the interrogatories and document requests by mail, and as to each required a response by March 21. (§§ 1013, subd. (a), 2030.260, subd. (a), 2031.260.)

Defendants, all of whom were represented by appellant Klugman, did not respond to the discovery requests by March 21. On March 24, counsel for Sinaiko wrote a letter to Klugman demanding responses to the discovery requests, without objection, by March 30. Klugman did not respond to the letter, and defendants did not respond to the discovery requests by March 30. As a result, on March 31, Sinaiko served all three defendants (by personal service on their attorney, Klugman) with motions to compel responses to the form interrogatories and document requests, and requesting monetary sanctions. Because March 31 was a court holiday, Sinaiko did not file the motions until April 1.

Later on March 31—after Sinaiko had served the motions—defendants prepared their "responses" to Sinaiko's form interrogatories and faxed them to Sinaiko's counsel. Each of the defendants responded to form interrogatories 50.1 through 50.6 in precisely the same way: "Defendant has filed a demurrer as to all of the contractual allegations contained in the plaintiff's complaint. The demurrers are both general, and special due to uncertainty. As indicated in the demurrers, defendant cannot at this time determine which contract, oral or written, if any, is or has been identified as at issue in this complaint and action. As such, this interrogatory requests information that may or may not exist at this time. Defendant cannot respond to this interrogatory at this time given the uncertainty of the identification of the terms and provisions of any contract, written or oral. The hearing on defendant's general and special demurrers . . . is currently scheduled for April 21 . . . ." Defendants did not serve responses to Sinaiko's document requests or produce any documents.

Not satisfied with defendants' responses to the interrogatories, and having no response to the document requests, Sinaiko did not take its motions to compel responses off calendar. Defendants, however, did not file any opposition to the motions. One week before the hearing, Sinaiko filed and served a "reply" memorandum, in which Sinaiko reiterated its request that the trial court order defendants "to fully respond, without objection" to both the interrogatories and the document requests. In a declaration submitted with the "reply," counsel for Sinaiko informed the trial court, "On March 31, defendants served untimely and deficient responses to the First Set of Form Interrogatories, in that they failed to respond substantively to Form Interrogatory Nos. 50.1 through 50.6. To date, defendants have not served a written

response to the First Requests for Production of Documents or served any documents responsive to the Requests for Production."

On April 26, the trial court heard Sinaiko's motions to compel responses. Defendants did not appear at the hearing. As reflected in the trial court's minute order (the April 26 Order), the trial court granted the motions to compel responses against all three defendants as to both the interrogatories and the document requests and ordered defendants to "respond without objection and produce all documents within 20 days." The trial court also awarded monetary sanctions totaling $2,208.89 against defendants, to be paid within 20 days. Sinaiko served upon defendants its notice of the order compelling responses that same day. The next day, April 27, the trial court overruled defendants' demurrers.

On May 6, defendants moved for reconsideration of the April 26 Order. The motion for reconsideration was set for hearing on June 13, nearly four weeks after the deadline to comply with the April 26 Order. On May 13, defendants first served verified responses to Sinaiko's document requests. The responses, however, stated that defendants would withhold certain categories of documents as trade secrets and proprietary information, and purported to incorporate a "privilege log." Defendants produced no documents, and did not tender payment of the monetary sanctions. On May 17—the last day that defendants had to comply with the April 26 Order—defendants applied ex parte to stay the April 26 Order until the trial court heard the motion for reconsideration. The trial court granted the stay.

On May 31, Sinaiko filed its opposition to defendants' motion for reconsideration and requested additional monetary sanctions of $4,200.00. On June 6, the parties stipulated to a protective order (entered by the trial court on June 15) regarding documents designated confidential or proprietary. On June 10, the Friday before the Monday hearing on the motion to reconsider, defendants, for the first time, produced documents in response to Sinaiko's document requests.

The parties appeared for defendants' motion for reconsideration on June 13. After the hearing began (and after the trial court reproved defense counsel for failing to follow court rules in the motion), defendants withdrew the motion. Klugman explained that he thought the motion for reconsideration was "moot" because defendants had "provided all the answers requested" and produced "all of the requested documents that are in our possession." The stay on the trial court's April 26 Order expired, and the trial court directed defendants to pay the monetary sanctions within 20 calendar days. The trial court denied Sinaiko's request for additional sanctions.

On June 28, after reviewing the documents produced by defendants prior to the hearing, counsel for Sinaiko wrote a letter to counsel for defendants detailing numerous deficiencies in defendants' document production. Sinaiko asserted, among other things, that defendants had produced "virtually no e-mail correspondence," even though such documents were responsive, and Sinaiko had produced "tens of thousands of pages of e-mail correspondence with" defendants. Sinaiko also claimed that defendants had not produced the requested "work papers, notes, analysis, models or . . . other information" underlying the financial opinions and valuations that defendants had conducted on behalf of (and for which they had been paid by) Sinaiko.

On July 5, after a further exchange of contentious correspondence, defendants paid Sinaiko $1,589.26 of the $2,208.89 in sanctions awarded by the trial court on April 26, and produced—in Klugman's words—"10,000 additional pages that may or may not be responsive to any and all of [Sinaiko's] requests for production of documents." Defendants also served another written response to the document requests. With respect to requests 17 through 22, defendants refused to produce documents relating to an entity called Da Vita Corporation, on the sole ground that Sinaiko had subpoenaed those documents from Da Vita Corporation. Further, even though the trial court had entered the stipulated protective order regarding confidential documents, defendants refused to produce documents relating to "any of its clients independent of Sinaiko" on the ground that such documents were proprietary information of defendants' clients. Defendants produced a handwritten "priveledge [sic] log" and "confidential log" purporting to identify documents withheld, but the log does not identify any specific documents with particularity.[6] Defendants never sought an additional protective order with respect to any of the documents withheld.

On August 11, Sinaiko filed and personally served upon defendants' counsel its motion for terminating sanctions based on defendants' failure to comply with the April 26 Order. The trial court ordered the hearing set for Friday, September 2. As with Sinaiko's original motion to compel responses, defendants failed timely to oppose the motion. Sinaiko nevertheless filed a "reply" memorandum on August 26, in which it informed the court that defendants' counsel had telephoned on Wednesday, August 24—two days *after* defendants' opposition was due—to give notice that defendants intended to apply ex parte to continue the September 2 hearing. Defendants, in fact, did apply ex parte on August 29 to continue the hearing, and for an extension of time to file their opposition. The trial court refused to continue the hearing.

---

[6] The log states nothing more than broad date ranges coupled with general document categories. For example, item 1 under the heading "confidential log" states, "(2/04-present): Healthcare valuation analyses," and item 2 states, "(6/04-present): Healthcare valuation analyses."

Instead, the trial court admonished defense counsel for his delay in requesting leave to file defendants' opposition and his failure to provide the opposition to Sinaiko's counsel in a timely manner. Nevertheless, the trial court accepted defendants' opposition for late filing, permitted Sinaiko to file a reply on September 1, and did not order sanctions.

The trial court heard Sinaiko's motion for terminating sanctions on September 2. In a minute order of that date (the September 2 Order), the court found that defendants had violated the April 26 Order with respect to form interrogatories 50.1 through 50.6 and document requests 2 through 22, and had shown "no substantial justification" for their failure to comply. The trial court denied terminating sanctions, but granted monetary sanctions against "defendant [sic] and attorney" in the amount of $8,786.36, payable within 45 days.[7] Defendants and Klugman timely appealed.[8]

## DISCUSSION

### A. Standard of Review

The award of a monetary sanction in excess of $5,000 is directly appealable. (§ 904.1, subd. (a)(12).) We review the trial court's order imposing the sanction for abuse of discretion. (*Sears, Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1350 [32 Cal.Rptr.3d 717].) We resolve all evidentiary conflicts most favorably to the trial court's ruling (*ibid.*), and we will reverse only if the trial court's action was " ' "arbitrary, capricious, or whimsical." ' " (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545 [51 Cal.Rptr.2d 311], quoting *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 36 [9 Cal.Rptr.2d 396].) "It is [appellant's] burden to affirmatively demonstrate error and, where the evidence is in conflict, this court will not disturb the trial court's findings." (*Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 487 [282 Cal.Rptr. 530], disapproved on other grounds in *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478, fn. 4 [66 Cal.Rptr.2d 319, 940 P.2d 906].) To the extent that reviewing the sanction order requires us to construe the applicable discovery statutes, we do so de novo, without regard to the trial court's ruling or reasoning. (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071 [19 Cal.Rptr.3d 324].)

---

[7] The trial court also granted evidentiary and issue sanctions that are not at issue in this appeal. (§ 904.1, subd. (a)(12).) The September 2 Order does not specify the statutory basis for the monetary sanction. Sinaiko's "Notice of Ruling" states that the award was pursuant to section 2023.030, subdivision (a) (monetary sanction against "one engaging in the misuse of the discovery process, or any attorney advising that conduct or both"). Defendants did not object to the notice. The conduct here constitutes a "[m]isuse[] of the discovery process." (§ 2023.010 subds. (d), (g).)

[8] As noted above, defendants dismissed their appeal. Klugman has not done so.

### B.  *The Civil Discovery Act*

The Civil Discovery Act provides litigants with the right to broad discovery. In general, "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (§ 2017.010.) "In establishing the statutory methods of obtaining discovery, it was the intent of the Legislature that discovery be allowed whenever consistent with justice and public policy. [Citation.] The statutory provisions must be liberally construed in favor of discovery and the courts must not extend the statutory limitations upon discovery beyond the limits expressed by the Legislature." (*Irvington-Moore, Inc. v. Superior Court* (1993) 14 Cal.App.4th 733, 738–739 [18 Cal.Rptr.2d 49], fn. omitted.) Civil discovery is intended to operate with a minimum of judicial intervention. "[I]t is a 'central precept' of the Civil Discovery Act . . . that discovery 'be essentially self-executing.' " (*Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 434 [79 Cal.Rptr.2d 62], quoting *Townsend v. Superior Court* (1998) 61 Cal.App.4th 1431, 1434 [72 Cal.Rptr.2d 333].)

Generally, the parties may modify the statutory discovery procedures by written stipulation (§ 2016.030), and, unless restricted by the trial court, are free to utilize any of the prescribed discovery methods during the action in any sequence (§§ 2019.010, 2019.020). Neither a propounding party's demands nor a responding party's responses are filed with the trial court. (See, e.g., §§ 2030.280, subd. (a), 2031.290, subd. (a).) Accordingly, the trial court does not usually consider either the propriety of a party's discovery demand or the adequacy of a party's response unless a dispute arises.

When discovery disputes arise as to interrogatories and document requests, the trial court may intervene in the discovery process in three circumstances. First, a responding party may move for a protective order to challenge a discovery demand. To prevail, it bears the burden (§ 2019.030, subd. (b)) to demonstrate that the "discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive" (§ 2019.030, subd. (a)(1)), or that the "selected method of discovery is unduly burdensome or expensive" (§ 2019.030, subd. (a)(2); see §§ 2030.090 [motion for protective order on interrogatories], 2031.060 [motion for protective order on inspection demands]). The responding party must also demonstrate that it made "a reasonable and good faith attempt at an informal resolution of each issue presented" by the motion for a protective order. (§ 2016.040; see §§ 2019.030, subd. (b), 2030.090, subd. (a), 2031.060, subd. (a).) This is sometimes referred to as an obligation to "meet and confer." (§ 2016.040.)

■ Second, if a propounding party is not satisfied with the response served by a responding party, the propounding party may move the court to compel further responses. (§§ 2030.300[9] [interrogatories], 2031.310 [inspection demands].) The propounding party must demonstrate that the responses were incomplete, inadequate or evasive, or that the responding party asserted objections that are either without merit or too general. (§§ 2030.300, subd. (a)(1)–(3), 2031.310, subd. (a)(1)–(3).) The propounding party must bring its motion to compel further responses within 45 days of the service of the response (§§ 2030.300, subd. (c), § 2031.310, subd. (c)), and must demonstrate that it complied with its obligation to "meet and confer." (§§ 2016.040, 2030.300, subd. (b), 2031.310, subd (b)(2).) (Also required is a separate statement as specified in Cal. Rules of Court, rule 3.1020.) In addition, a party moving to compel further responses to an inspection demand must establish "good cause justifying the discovery sought by the inspection demand." (§ 2031.310, subd. (b)(1).)

■ Third, and of particular relevance to this case, the trial court may intervene when a party "fails to serve a timely response." (§§ 2030.290 [interrogatories],[10] 2031.300 [inspection demands].) A party that fails to serve a timely response to the discovery request waives "any objection" to the

---

[9] Section 2030.300, subdivision (a) provides: "On receipt of a response to interrogatories, the propounding party may move for an order compelling a further response if the propounding party deems that any of the following apply:

"(1) An answer to a particular interrogatory is evasive or incomplete.

"(2) An exercise of the option to produce documents under Section 2030.230 is unwarranted or the required specification of those documents is inadequate.

"(3) An objection to an interrogatory is without merit or too general."

[10] Section 2030.290 provides: "If a party to whom interrogatories are directed fails to serve a timely response, the following rules apply:

"(a) The party to whom the interrogatories are directed waives any right to exercise the option to produce writings under Section 2030.230, as well as any objection to the interrogatories, including one based on privilege or on the protection for work product under Chapter 4 (commencing with Section 2018.010). The court, on motion, may relieve that party from this waiver on its determination that both of the following conditions are satisfied:

"(1) The party has subsequently served a response that is in substantial compliance with Sections 2030.210, 2030.220, 2030.230, and 2030.240.

"(2) The party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect.

"(b) The party propounding the interrogatories may move for an order compelling response to the interrogatories.

"(c) The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a response to interrogatories, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. If a party then fails to obey an order compelling answers, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Chapter 7 (commencing with Section 2023.010). In lieu of or in addition to that sanction, the court may impose a monetary sanction under Chapter 7 (commencing with Section 2023.010)."

request, "including one based on privilege" or the protection of attorney work product. (§§ 2030.290, subd. (a), 2031.300, subd. (a).) The trial court may relieve the party of its waiver, but that party must first demonstrate that (a) it subsequently served a response to the demand; (b) its response "is in substantial compliance" with the statutory provisions governing the form and content of the response; and (c) "[t]he party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect." (§§ 2030.290, subd. (a)(1)–(2), 2031.300, subd. (a)(1)–(2).) The propounding party can move the trial court for an order compelling a party to respond to the discovery request. (§§ 2030.290, subd. (b), 2031.300, subd. (b).) Unlike a motion to compel *further* responses, a motion to compel responses is not subject to a 45-day time limit, and the propounding party does not have to demonstrate either good cause or that it satisfied a "meet and confer" require-ment. (See generally, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶¶ 8:1137 to 8:1144, pp. 8F-59 to 8F-60, ¶¶ 8:1483 to 8:1489, pp. 8H-29 to 8H-30 (Weil & Brown); see also Cal. Rules of Court, rule 3.1020(b) ["A separate statement is not required when no response has been provided to the request for discovery"].)

■ If a party fails to serve a timely response, and the propounding party moves for and obtains a court order compelling a response, the trial court must impose a monetary sanction against the delinquent party unless that party acted with "substantial justification" or the sanction would otherwise be unjust. (§§ 2030.290, subd. (c), 2031.300, subd. (c).) In addition, if that party subsequently disobeys the court's order compelling a response, the trial court may then "make those orders that are just," including the imposition of an issue sanction, an evidence sanction, or a terminating sanction. (§§ 2030.290, subd. (c), 2031.300, subd. (c).) "In lieu of or in addition" to any of those sanctions, the trial court "may impose a monetary sanction under" section 2023.030. (§§ 2030.290, subd. (c), 2031.300, subd. (c).) Section 2023.030[11] authorizes a trial court to impose a monetary sanction against any party or attorney, or both, who has engaged in misuse of the discovery process. Misuses of the discovery process include, among other things, failing to respond or to submit to an authorized method of discovery; making, without

---

[11] Section 2023.030 provides in pertinent part: "To the extent authorized by the chapter governing any particular discovery method or any other provision of this title, the court . . . may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] (a) The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both, pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. . . . If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

substantial justification, an unmeritorious objection to discovery; making an evasive response to discovery; and disobeying a court order to provide discovery. (§ 2023.010.)

### C. *Authority to Award a Monetary Sanction*

Klugman contends that the trial court lacked the authority to award a monetary sanction in the September 2 Order because the April 26 Order was invalid, and because Sinaiko failed to comply with certain procedural requirements in its motion for terminating sanctions. We reject these contentions.

> 1. *Defendants' untimely interrogatory responses did not divest the trial court of the authority to compel responses in the April 26 Order.*[12]

Klugman's primary contention is that, because defendants served their "responses" to Sinaiko's interrogatories before Sinaiko filed its motion to compel responses under section 2030.290, subdivision (b), the trial court lacked the authority to grant Sinaiko's motion. Klugman argues that Sinaiko's sole remedy in those circumstances was to move to compel *further* responses to the interrogatories under section 2030.300, subdivision (a). We disagree for three independent reasons.

First, section 2030.290 provides that "[i]f a party to whom interrogatories are directed fails to serve a timely response, the following rules apply . . . ." Defendants unquestionably "fail[ed] to serve a timely response" to Sinaiko's form interrogatories; accordingly, the rules set forth in section 2030.290 apply. Those rules provide that the responding party "waives . . . any objection to the interrogatories, including one based on privilege" (§ 2030.290, subd. (a)), and that the propounding party "may move for an order compelling response to the interrogatories" (§ 2030.290, subd. (b)). Once defendants "fail[ed] to serve a timely response," the trial court had authority to grant Sinaiko's motion to compel responses.

The trial court was entitled to rule on Sinaiko's motion to compel responses based on the information before it. Sinaiko had informed the trial court prior to the April 26 hearing, "On March 31, 2005, defendants served untimely and deficient responses to the First Set of Form Interrogatories, *in*

---

[12] Sinaiko requested sanctions related to the interrogatory responses; the trial court found that defendants violated the April 26 Order by failing to respond to form interrogatories 50.1 through 50.6; and the trial court appears to have awarded sanctions based on that finding, without apportioning the sanction award between the interrogatories and the document requests. The propriety of the sanction thus turns, at least in part, on whether the trial court exceeded its authority in the April 26 Order by compelling responses to the interrogatories.

that they failed to respond substantively to Form Interrogatory Nos. 50.1 through 50.6." (Italics added.) The trial court thus knew that defendants had served interrogatory responses, but also had a reasonable basis to conclude that defendants had not, in effect, responded to form interrogatories 50.1 through 50.6. Defendants had the opportunity to put their interrogatory responses before the trial court and to make whatever arguments they deemed appropriate to oppose the motion. They did not. The trial court was not required to speculate about what defendants' interrogatory responses might have contained. For this reason, the trial court had authority to grant Sinaiko's motion and did not abuse its discretion in doing so.

Second, Klugman's argument that defendants' untimely statements in response to form interrogatories 50.1 through 50.6 divested the trial court of its power to grant Sinaiko's motion is premised on the assumption that defendants' statements were, in fact, "responses" to the interrogatories. That is not the case. Klugman has characterized the statements as neither "answers" nor "objections," but as statements of defendants' "inability to respond." That characterization demonstrates that the responses were not merely insufficient, but legally invalid. (See *Laguna Auto Body v. Farmers Ins. Exchange, supra*, 231 Cal.App.3d at p. 487 [responding party violated order to compel answers by providing responses that were "legally invalid, because they were unverified"].)

■ Section 2030.210, subdivision (a) requires a responding party to respond "separately to each interrogatory." Unlike section 2031.210, subdivision (a)(2), which permits a party to respond to an inspection demand with "[a] representation that the party lacks the ability to comply with the demand," section 2030.210, subdivision (a), requires a party responding to interrogatories to provide either "[a]n answer containing the information sought" (§ 2030.210, subd. (a)(1)); an "exercise of the party's option to produce writings" from which the answer can be ascertained (§ 2030.210, subd. (a)(2)), or "[a]n objection to the particular interrogatory" (§ 2030.210, subd. (a)(3)). Accordingly, a responding party generally may *not* respond to interrogatories just by asserting its "inability to respond." (See § 2030.220, subd. (c) [responding party who "does not have personal knowledge sufficient to respond fully" to interrogatory may so state, but must "make a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations," unless the information is "equally available to the propounding party"].) Defendants did not "respond" to the interrogatories by stating that they were "[unable] to respond." A response to some interrogatories does not divest a trial court of authority under section 2030.290 to compel answers to those interrogatories as to which there was no appropriate response. Because defendants did not provide legally valid responses to interrogatories 50.1 through 50.6, the trial court had the authority to compel such responses under section 2030.290.

■    Third, section 2030.290 does not preclude the trial court from granting a motion to compel responses under subdivision (b), even if the responding party serves untimely interrogatory responses after the propounding party has served the motion. We have found, and the parties have cited, no case considering this precise issue. We therefore turn to the language of the relevant statutes. "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665].) That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' (*Ibid.*) We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222 [110 Cal.Rptr. 144, 514 P.2d 1224] . . . .)" (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129], citations omitted; accord, *Scottsdale Ins. Co. v. Superior Court* (1997) 59 Cal.App.4th 263, 273 [69 Cal.Rptr.2d 112] [construing former § 2031].)

As noted above, section 2030.290 provides that "[i]f a party to whom interrogatories are directed fails to serve a timely response, the following rules apply . . . ." Those rules include that party's waiver of all objections under subdivision (a), and the propounding party's right to move to compel responses under subdivision (b). Nothing in the text of section 2030.290 suggests that section 2030.290 *ceases* to apply merely because a party serves a tardy response. Rather, the text implies the contrary. For example, the court "may" relieve a party who provides untimely responses from its waiver of objections under section 2030.290, subdivision (a), if that party demonstrates that three conditions are satisfied: (1) the party "*has subsequently* served a response" (italics added); (2) the response is "in substantial compliance" with the statutory provisions governing the form and content of interrogatory responses; and (3) the failure to respond in a timely fashion "was the result of mistake, inadvertence, or excusable neglect." (§ 2030.290, subd. (a).) Section 2030.290 suggests that merely providing untimely responses does not divest the trial court of its authority under that section.

This construction is supported by the manner in which section 2030.290 operates in conjunction with section 2030.300. If a party fails to serve a timely response to interrogatories, then under section 2030.290, subdivision (a), it waives all objections and the burden shifts to that party to demonstrate that it is entitled to relief from the waiver. In contrast, if the

party does serve a timely response—even if that response is deficient in some respect—then the responding party has the procedural protections afforded by section 2030.300. Under that section, the burden is on the propounding party to demonstrate that the response is inadequate or improper, and that the propounding party made a good faith attempt to "meet and confer." In addition, the propounding party has only 45 days to seek relief. Together, these two sections encourage parties to make reasonable discovery requests, to respond to discovery in a timely fashion, and to resolve their own disputes.

To accept Klugman's interpretation would remove an important incentive for parties to respond to discovery in a timely fashion. Under Klugman's theory, a party to whom interrogatories were directed could wait until the hearing on a section 2030.290 motion was imminent,[13] then serve a set of evasive and incomplete responses, and thereby unilaterally deprive the trial court of authority to hear the motion. Even though the responding party had waived all objections to the discovery, the burden would shift to the propounding party, first to meet and confer, and then to demonstrate the impropriety of the responding party's responses. The statutory language does not suggest such a result.

■ Under section 2030.290, therefore, once a party has failed to serve timely interrogatory responses, the trial court has the authority to hear a propounding party's motion to compel responses under section 2030.290, subdivision (b), regardless of whether a party serves an untimely response. If a party fails to serve a timely response to interrogatories, then by operation of law, all objections that it could assert to those interrogatories are waived. (§ 2030.290, subd. (a).) Unless that party obtains relief from its waiver, the propounding party is entitled to move under subdivision (b) for an order compelling the response to which the propounding party is entitled—that is, a response without objection, and that substantially complies with the provisions governing the form (§ 2030.210) and completeness (§ 2030.220) of interrogatory responses.

The question we address is the extent of the trial court's *authority* under section 2030.290, subdivision (b), not whether relief should be granted in a particular case. If a party provides an untimely interrogatory response that does not contain objections and that sets forth legally valid responses to each interrogatory, the untimely response might completely or substantially resolve

---

[13] Though *Klugman* emphasizes that defendants served their untimely interrogatory responses before Sinaiko filed its motions, nothing in section 2030.290 suggests that there is any significance as to when after the due date the untimely responses are served. Under Klugman's theory, an untimely interrogatory response served the day before the hearing on a motion to compel responses would as effectively "render[] the relief sought in the motion[] moot" as, in this case, a belated response served the day before the motion was filed.

the issues raised by a motion to compel responses under section 2030.290. Even in such cases, however, the trial court retains the authority to hear the motion. (See Cal. Rules of Court, rule 3.1030(a) ["The court may award sanctions under the Discovery Act in favor of a party who files a motion to compel discovery, even though . . . the requested discovery was provided to the moving party after the motion was filed"].) Whether a particular response does resolve satisfactorily the issues raised by a motion is a matter best determined by the trial court in the exercise of its discretion, based on the circumstances of the case. In many cases involving untimely responses, the propounding party will take the motion off calendar or narrow its scope to the issue of sanctions. If the propounding party proceeds with the motion, however, the trial court has the discretion to rule on the motion. The trial court might compel responses without objection if it finds no legally valid responses have been provided to one or more interrogatories; it might deny the motion to compel responses as essentially unnecessary, in whole or in part, and just impose sanctions; it might treat the motion as one under section 2030.300 and either determine that further answers are required,[14] or order the propounding party to "meet and confer" (§ 2030.300, subd. (b)) and file a separate statement (Cal. Rules of Court, rule 3.1020(a)(2), (c)); or it might take the motion off calendar, thereby requiring the propounding party to file a motion under section 2030.300.

*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771 [149 Cal.Rptr. 499] (*Deyo*), relied upon by Klugman, is inapposite. In that case, which was decided under the Civil Discovery Act of 1957, plaintiff Deyo, a lawyer, sued and served interrogatories on a former client, Kilbourne, who represented himself. Because Kilbourne was seriously ill and in and out of the hospital for several months, Kilbourne did not respond to Deyo's interrogatories. Deyo moved to strike Kilbourne's answer based on Kilbourne's failure to respond. The trial court refused to strike Kilbourne's answer, but "directed Mr. Kilbourne to file answers by December 15, 1976." (84 Cal.App.3d at p. 778.) Kilbourne "filed" answers on December 15, but his responses "were clearly not *fully* responsive to the questions propounded." (*Ibid.*, italics added.) Deyo moved again to strike Kilbourne's answer. This time, the trial court struck Kilbourne's answer and entered judgment in favor of Deyo. Kilbourne appealed. (*Id.* at pp. 778–779.) The Court of Appeal reversed, holding that the trial court could not sanction Kilbourne for violating the order "to file answers by

---

[14] Normally, to compel further responses, the trial court would need to find that the propounding party made an effort at informal resolution sufficient to satisfy the "meet and confer" requirement of section 2030.300, subdivision (b). Although the court rule requiring a separate statement on a motion to compel further responses (Cal. Rules of Court, rule 3.1020) would permit the trial court to continue or deny a motion to compel when no separate statement is provided, it does not limit a trial court's discretion to compel further answers notwithstanding the absence of a separate statement.

December 15, 1976" because Kilbourne had, in fact, filed answers by December 15, 1976. (*Id.* at pp. 797–798.)

As its facts and procedural posture indicate, *Deyo, supra,* 84 Cal.App.3d 771, is not determinative as to whether the trial court in this case had authority to issue the April 26 Order. *Deyo* addressed a different issue. The trial court in *Deyo* had authority to issue its order compelling Kilbourne's responses to Deyo's interrogatories, and Kilbourne did not challenge that authority on appeal. Rather, the issue in *Deyo* was whether the trial court exceeded its authority by imposing *sanctions* against Kilbourne for "violating" that order when, in fact, Kilbourne had complied. (*Id.* at p. 779 [defining issue as, "What sanctions are proper when a party fails to fully answer interrogatories?"].) As the *Deyo* court articulated its holding, "In November 1976, the court denied respondent's request for sanctions but directed appellant to file answers by December 15, 1976. Appellant complied with that order and, therefore, no sanctions under Section 2034, subdivision (b), of the Code of Civil Procedure were permissible." (*Id.* at pp. 797–798.) *Deyo* thus stands for the unremarkable proposition that a party cannot be sanctioned for violating a discovery order that it did not, in fact, violate. That proposition has no bearing on whether the trial court in this case had the authority in the April 26 Order to compel responses. The trial court did not, in its April 26 Order, issue the monetary sanction under review here. The trial court had authority to determine whether defendants complied with their statutory obligations.

*Deyo, supra,* 84 Cal.App.3d 771, also does not preclude the monetary sanction for violating the April 26 Order imposed by the trial court in the September 2 Order. Unlike the defendant in *Deyo*, the defendants in this case did not do *anything* to comply with the trial court's order compelling responses to form interrogatories 50.1 through 50.6, even after the trial court overruled their demurrers, and failed to produce all of the documents the trial court ordered them to produce. Moreover, while Kilbourne's untimely interrogatory answers were "not fully responsive" (*id.* at p. 778), there is no indication in *Deyo* that Kilbourne's responses were legally invalid, as defendants' statements of "inability to respond" to the interrogatories in this case. For these reasons, the trial court's September 2 Order awarding a monetary sanction against Klugman was not inconsistent with *Deyo*. (§ 2023.010, subd. (g); see *Laguna Auto Body v. Farmers Ins. Exchange, supra,* 231 Cal.App.3d at p. 489 [affirming sanctions for violating order to compel responses under former § 2030, subd. (k) when belated interrogatory answers were "legally invalid" and trial court "could reasonably infer [the responding parties] were merely obstructing and delaying discovery"].)

■ We conclude that the trial court had the authority to grant Sinaiko's motion to compel interrogatory responses under section 2030.290, subdivision (b). The violation of that order could therefore properly serve as the basis for a monetary sanction pursuant to sections 2030.290, subdivision (c) and 2023.030.

> 2. *The award of a monetary sanction in the September 2 Order was not unauthorized.*

■ Klugman contends that the trial court lacked authority to award a monetary sanction in its September 2 Order because Sinaiko failed to bring its motion for terminating sanctions within 45 days of defendants' interrogatory responses. The 45-day limit, however, applies only to motions to compel further responses to interrogatories under section 2030.300. (§ 2030.300, subd. (c).) Section 2030.290 contains no such limitation in either subdivision (b), permitting motions to compel answers, or subdivision (c), permitting sanctions for failure to obey a court order compelling answers. (See Weil & Brown, *supra*, ¶ 8:1138, p. 8F-59.) Nor does section 2023.040 contain a 45-day limit. Unlike section 2030.300, section 2023.040 requires only that a motion seeking sanctions for misuse of discovery "be supported by a memorandum of points and authorities, and accompanied by a declaration setting forth facts supporting the amount of any monetary sanction sought."
■ "When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning." (*People v. Trevino* (2001) 26 Cal.4th 237, 242 [109 Cal.Rptr.2d 567, 27 P.3d 283].)

■ Klugman also argues that Sinaiko was required to "meet and confer" prior to making the motion for terminating sanctions. Although the "meet and confer" requirement is an express prerequisite to moving to compel further responses to interrogatories (§ 2030.300, subd. (b)) and inspection demands (§ 2031.310, subd. (b)(2)), no such requirement appears in the statutes permitting sanctions based on a party's violation of a court order compelling responses (§§ 2030.290, subd. (c), 2031.300, subd. (c)) or for misuse of discovery (§ 2023.040).[15] (See *Leach v. Superior Court* (1980) 111 Cal.App.3d 902, 906 [169 Cal.Rptr. 42] ["meet and confer" requirement of Cal. Rules of Court, former rule 222.1 (now embodied in § 2030.300, subd. (b)) did not apply when propounding party sought order compelling responses to interrogatories and sanctions for responding party's failure to respond "within the statutorily permitted time"].)

---

[15] In his reply brief, Klugman recasts the "meet and confer" argument to contend that the amount of sanctions awarded was unreasonable because, had Sinaiko "engaged in the required meet and confer process," defendants "could have addressed" their violations of the April 26 Order. We will not speculate regarding what defendants "could" have done. Defendants *should* have complied with the trial court's order, and they failed to do so.

That Sinaiko was not required to meet and confer before seeking sanctions does not, as Klugman claims, make Sinaiko "the sole arbiter of what would . . . be deemed 'compliant' with the April 26, 2005 Order." As described above, defendants could have sought relief in the trial court from their waivers; such relief necessarily would have entailed a finding that defendants' responses substantially complied with defendants' discovery obligations. (§§ 2030.290, subd. (a)(1), 2031.300, subd. (a)(1).) In the alternative, if defendants believed that Sinaiko had asserted positions with respect to the April 26 Order that subjected defendants to "unwarranted annoyance" or "undue burden and expense," defendants could have moved for a protective order determining that defendants had complied with the April 26 Order. Such a motion would have been subject to the "meet and confer" process. (§§ 2030.090, subd. (a), 2031.060, subd. (a).) In any event, it was ultimately the trial court—not Sinaiko—which determined that defendants violated the April 26 Order.

Finally, Klugman makes the related arguments that the April 26 Order was ambiguous because it "purported to order Defendants to serve [interrogatory] responses which they had already served," and exceeded the scope of the trial court's authority under sections 2030.290, subdivision (b) and 2031.300, subdivision (b), because an order compelling a response "cannot extend to govern the ultimate substance of any such response." The trial court's order, however, was not ambiguous. The trial court ordered defendants "to respond without objection and produce all documents within 20 days." This means exactly what it says: that defendants were to respond without objection, in conformance with the statutory provisions governing the form and content of responses, and to produce all documents within 20 days. The trial court could not ascertain whether defendants had complied with the April 26 Order *except* with reference to the "ultimate substance" of defendants' responses. Here, Sinaiko reported to the trial court that, although defendants had provided some interrogatory responses, there was, in effect, no proper response to interrogatories 50.1 through 50.6. Moreover, as discussed, the trial court had the discretion to assess the adequacy of defendants' untimely responses upon a motion to compel responses under section 2030.290. The trial court thus did not exceed its authority either by issuing the April 26 Order or by imposing sanctions for violating that order.

D. *The Trial Court Did Not Abuse Its Discretion In Concluding That Defendants Violated the April 26 Order*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. .

---

[*]See footnote, *ante,* page 390.

## DISPOSITION

The trial court's September 2, 2005 order awarding a monetary sanction of $8,786.36 against Steven M. Klugman is affirmed. No costs are awarded.

Armstrong, Acting P. J., and Kriegler, J., concurred.