Filed 9/22/22  Yue v. Alvernaz Partners CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JERRY YUE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ALVERNAZ PARTNERS, LLC et al.,<br><br>　　　Defendants and Appellants. | A161119<br><br>(Alameda County Super.<br>Ct. No. RG19014821) |

Jerry Yue (Yue) purports to own a 50 percent interest in the real property located at 424 Merritt Avenue in Oakland.  After Yue's ex-wife defaulted on a third-position loan secured by the property, a non-judicial foreclosure ensued.  In turn, Yue brought suit for wrongful foreclosure and other claims against several defendants, including Cosmas Mahagama (Mahagama), who funded the third-position loan.  Mahagama appeals from an order imposing monetary sanctions against him for misuse of the discovery process, arguing that the order was an abuse of discretion and that there was "substantial justification" for Mahagama's alleged misconduct under Code of Civil Procedure section 2023.030, subdivision (a),[1] inter alia.

---

[1] All subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

We conclude that the trial court acted well within its discretion and assess further sanctions against Mahagama for taking a frivolous appeal.

# BACKGROUND

## I.

### *The Complaint*

On April 12, 2019, Yue filed a verified complaint for wrongful foreclosure and other causes of action against Mahagama and two other named defendants. The complaint alleges that in 1989, Yue recorded his interest in the Oakland property, which he co-owned with his then-wife, known today as Patricia Jiang. When the two divorced in 1998, Yue was taken off the title. However, Yue and Jiang remained amicable and a grant deed recorded two years later restored Yue to half ownership.

On May 6, 2015, without Yue's knowledge, Jiang took out a second mortgage in the amount of $350,000 and a third mortgage of $135,000, both of which were secured against the Oakland property. The second position deed of trust was held by a Stuart Herman, with Mahagama holding the third position. To arrange the loan, Mahagama hired Olympia Financial Mortgage, Inc. (Olympia), and to insure title to the Oakland property, he contracted with Fidelity National Title Company (Fidelity). The grant deed and deed of trust recorded in connection with Mahagama's loan make no mention of Yue's interest in the property.

After Jiang fell behind on the loan payments, an August 31, 2018 Notice of Default began the non-judicial foreclosure process underlying Yue's complaint.

2

## II.

### *Discovery*

On January 21, 2020,[2] Mahagama was served Yue's "Special Interrogatories Set One," "Requests for Production of Documents Set One," "Requests for Admissions, Set One" and "Form Interrogatories Set One." Those discovery requests went unanswered until March 27, the date of Mahagama's unverified "Responses to Plaintiff Jerry Yue's Special Interrogatories, Set One." On May 13, Mahagama finally provided verified responses to the interrogatories but produced no documents until his "Amended Responses to . . . Yue's Requests for Production of Documents, Set One" were served on May 22.

On May 19, Yue requested an informal discovery conference. When the trial court held the conference on June 1, it agreed with Yue's counsel, who argued that Mahagama's then-current responses were deficient for their various failures to comply with relevant provisions of the Code of Civil Procedure. Accordingly, Mahagama's counsel promised to "investigat[e] and provid[e] . . . code-compliant responses." However, he failed to respond for another four weeks.

On June 25, having received none of the promised responses, Yue filed a "Motion to Compel Responses to Requests for Production of Documents and Special Interrogatories and Request for Sanctions Against Defendant Cosmas Mahagama and His Attorney . . . ." Yue's motion argued that Mahagama had failed to produce code-compliant responses to Yue's discovery requests and that Mahagama appeared to be withholding information and documents he had a legal obligation to produce. In support of the latter argument, Yue cited *Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 782, for the proposition

---

[2] All dates below refer to the year 2020 unless otherwise noted.

3

that a party "cannot plead ignorance to information which can be obtained from sources under his control." Thus, according to Yue, Mahagama had a duty to request relevant materials from "his agents," Olympia and Fidelity.

Mahagama served his unverified "Second Amended Responses to . . . Yue's Requests for Production of Documents, Set One" on June 29, later verifying those responses on August 20. He filed an opposition to Yue's motion to compel on August 13, arguing that any materials "in the possession, custody and control of Olympia . . . and Fidelity" were not within Mahagama's control. As to the failure of his previous responses to comply with the Code of Civil Procedure, Mahagama's opposition suggested that any such defects had been remedied by his June 29 responses. On August 26, the motion to compel was argued before the Honorable Paul D. Herbert.

## III.

### *The Order Imposing Monetary Sanctions*

The trial court issued its order granting the motion to compel and imposing monetary sanctions on Mahagama on September 9. Relying in part on the passage from *Deyo v. Kilbourne* cited in Yue's motion, the trial court held that "if Mahagama has a legal right to obtain the documents requested by [Yue], Mahagama must exercise that right and then provide the requested documents . . . ." In addition to that discussion of "control," the trial court's order observes that "by the time the moving party filed this motion, Mahagama still had not provided verified, code[-compliant] responses to the Requests at issue herein." Accordingly, the trial court found that "Mahagama's unreasonable conduct necessitated the filing of this motion and that Mahagama opposed this Motion without substantial justification." For those reasons, Mahagama was ordered to "pay $7,314.00 to [Yue's] counsel to compensate for the time spent on" the motion to compel.

4

After Mahagama timely filed this appeal challenging the trial court's sanctions order, Yue moved this court to sanction Mahagama and his attorney, arguing that the appeal was frivolous or taken solely for delay.

## DISCUSSION

We must therefore decide whether the trial court abused its discretion in sanctioning Mahagama, and if not, whether raising that question was so frivolous or dilatory as to call for further sanctions. Because there was no abuse of discretion and no good reason to believe otherwise, we affirm the trial court's order and assess further sanctions against Mahagama and his counsel.

## I.

### *The Trial Court Acted Within Its Discretion.*

Mahagama argues that the trial court erred in its September 9 order imposing monetary sanctions on him in the amount of $7,314.00. We disagree.

A trial court's order imposing monetary sanctions is reviewed for abuse of discretion. (*Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 73.) It will be reversed "only if [the trial court] was arbitrary, capricious, or whimsical in the exercise of that discretion." (*Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 191 (*Howell*), disapproved on another ground by *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 516, fn. 17.) "An order or judgment correct on any theory will be affirmed on appeal," even where the trial court "might have had the wrong statute in mind." (*Mattco Forge, Inc. v. Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, 1440 (*Mattco Forge*).)

"[I]n reviewing the trial court's determination, '[w]e defer to the court's credibility decisions and draw all reasonable inferences in support of the court's ruling.' [Citation.] To the extent the trial court's decision to issue sanctions depends on factual determinations, we review the record for substantial evidence to support those determinations. [Citation.] Thus, our review ' "begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trial court]." ' " (*Howell*, *supra*, 18 Cal.App.5th at p. 192.)

Section 2023.030, subdivision (a), provides that a trial court "may impose a monetary sanction ordering that one engaging in the misuse of the discovery process . . . pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." "Misuses of the discovery process include, but are not limited to [¶] . . . [¶] [m]aking, without substantial justification, an unmeritorious objection to discovery," and "[m]aking an evasive response to discovery." (§ 2023.010, subds. (e), (f).) When monetary sanctions are authorized, the trial court must "impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a).)

"The party subject to sanctions bears the burden to establish it acted with substantial justification or other circumstances make the imposition of the sanction unjust. [Citation.] Substantial justification means clearly reasonable justification that is well grounded in both law and fact. [Citations.] The losing party has the burden of proving substantial justification on appeal. [Citations.]" (*Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1269.)

6

Here, the trial court ordered Mahagama to "pay $7,314.00 to [Yue's] counsel to compensate for the time spent on" Yue's June 25 Motion to Compel Responses to Requests for Production of Documents and Special Interrogatories. In so ruling, the trial court found that "Mahagama's unreasonable conduct necessitated the filing of [Yue's] motion."

Accordingly, Yue's motion provides crucial context for the trial court's order. In that motion, Yue rested his argument for sanctions on two discrete grounds. First, Yue argued under sections 2031.300 and 2023.010, which govern the sanctionable misconduct that occurs when a party "unsuccessfully . . . opposes a motion to compel" responses without "substantial justification." In that category of misconduct Yue placed Mahagama's then-ongoing refusal to demand or request information from Fidelity. Secondly, Yue argued that Mahagama "engag[ed] in conduct that is a misuse of the discovery process" under section 2023.030 by providing deficient responses to Yue's requests; according to Yue, Mahagama's responses were " 'evasive' " and failed to comply with multiple requirements of the Code of Civil Procedure.

That the trial court ordered sanctions on the second ground as well as the first is evident from the order's discussion of Mahagama's "unreasonable conduct." Mahagama was originally served the discovery requests at issue "on January 21." He "failed to respond" within the statutorily prescribed 35-day window and in turn "waived any objections to the [r]equests." Although Mahagama eventually responded, the inadequacy of his responses was the subject of an informal discovery conference requested by Yue on May 19. At that conference, the trial court informed Mahagama that his "responses were deficient and further responses were warranted." By the time Yue filed the

7

motion that led to the trial court's order, "Mahagama still had not provided verified, code[-compliant] responses."

Not only are these statements of fact supported by substantial evidence; they are uncontested. Both parties agree that the discovery requests underlying the sanctions were served on Mahagama on or around January 21. In his opposition to Yue's motion to compel, Mahagama "agree[d] that since his attorney did not obtain an extension of time to respond to the requests for production and interrogatories . . . , his objections to these responses have been waived." At the hearing on the same motion, Mahagama's attorney acknowledged that "in [the] informal discovery conference on Monday, June 1st, . . . the Court agreed with [Yue's attorney] that [Mahagama's] amended responses to the request for documents were deficient and that further responses were warranted." Mahagama's counsel went on to note that Mahagama's ostensibly code-compliant responses[3] were not served on Yue until June 29—four days after Yue filed the motion to compel—and that Mahagama didn't verify them until the week before the August 26 hearing.

Nor is there any doubt as to the failure of Mahagama's responses to comply with the requirements of the Code of Civil Procedure before Yue filed the motion to compel. The responses operative at that time were Mahagama's verified "Amended Responses to Plaintiff Jerry Yue's Special Interrogatories, Set One," and verified "Amended Responses to Plaintiff Jerry

---

[3] Replying to Mahagama's opposition to the motion to compel, Yue denied that those June 29 responses were fully code-compliant. Because the deficiency of Mahagama's earlier responses is dispositive of this appeal, we do not decide whether his later responses satisfied all relevant statutory requirements.

Yue's Requests for Production of Documents, Set One"—both served in May—and their deficiencies are beyond dispute.

An illustrative example can be found in Mahagama's May 22 response to Yue's "Request for Production No. 48," which asked Mahagama to "produce all documents and communications REFERRING TO the SUBJECT PROPERTY." Section 2031.210, subdivision (a), requires a non-objecting party to respond to a demand for production by either stating that the party "will comply with the particular demand" or representing "that the party lacks the ability to" do so. The latter kind of representation should: "affirm that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand[;] . . . specify whether the inability to comply is because the particular item or category has never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in the possession, custody, or control of the responding party[; and] set forth the name and address of any natural person or organization known or believed by that party to have possession, custody, or control of that item or category of item." (§ 2031.230.)

When responding to Request 48 (and several others), Mahagama failed to make any such representation, stating only that he "refers to the attached Exhibits 'A' and 'B' Deeds of Trust, the Exhibit 'C' Notice of Default," the Exhibit 'D' Trustee's Deed upon Sale, the Exhibit 'E' Preliminary Report, and the Exhibit 'F' Loan Policy." More, Mahagama's June 29 responses *do* contain such representations—a tacit concession that his earlier responses failed to comply with the Code of Civil Procedure in this respect. This was no trivial omission, either, given the paucity of materials Mahagama had produced. As Yue argued in his motion to compel, the "equivocal statement" in Mahagama's May 22 response could do "nothing to assuage the concern

9

that" Mahagama, or his "attorney/agents may have some documents responsive to this request." In light of Mahagama's contemporaneous failure to have produced any of his correspondence with Olympia, for example, this was an eminently reasonable concern. [4, 5]

In his opening brief, Mahagama argues that the "Second Amended Responses" he served on June 29 and verified on August 20 met "the requirements of Code of Civil Procedure Section 2031.230." Thus, Mahagama claims to have served verified, code-compliant responses before the September 9, 2022 sanctions order. This argument ignores that the sanctions order rested in part on the ground that "Mahagama's unreasonable conduct necessitated the filing of" Yue's June 25 motion to compel. That basis for the trial court's order is unaffected by Mahagama's post-June 25 conduct. Moreover, Mahagama did not concede that his responses were inadequate. He filed opposition to the motion, which required Yue to expend additional time and funds to obtain a ruling that would resolve the issues that remained in dispute.

Furthermore, as our colleagues in the Second District found in *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 408-409 (*Sinaiko*), a "trial court retains the authority to hear the motion" to compel responses even if "a party provides an

---

[4] Mahagama produced such correspondence later, on August 6.

[5] We grant Yue's unopposed January 25, 2022 request for judicial notice under Evidence Code section 452, subdivision (d). (Cal. Rules of Court, rule 8.252 (a)(2)(C).) As relevant here, we note that on June 18, 2021, the trial court denied Mahagama's motion for summary judgment because there remained a triable issue of material fact concerning Mahagama's "liability for the actions of his agents Olympia Financial and Fidelity National Title Company in recording a Deed of Trust and Grant Deed on May 6, 2015[,] that appears to represent that . . . Jiang was the only interest in the title."

10

untimely . . . response" which "might completely or substantially resolve the issues raised by [that] motion." In such a case, the court "might deny the motion to compel responses as essentially unnecessary . . . and just impose sanctions." (*Id*. at p. 409.) Here, where we are reviewing the imposition of sanctions and not the portion of the order compelling further responses, it is enough to note that the trial court maintained the authority to impose those sanctions even after Mahagama produced his June 29 responses, and that it remained within the court's discretion to sanction Mahagama for the misconduct he committed before those untimely responses were served.

As to that misconduct, Mahagama has made no showing that would support a finding that he "acted with substantial justification" so as to exempt him from sanctions under section 2023.020. Rather, he argues that he had substantial justification for opposing Yue's June 25 motion for sanctions, contending that he did not have "control" over the materials Yue sought. However, because we uphold the order based on the misconduct that pre-dated the filing of Yue's motion, we need not reach the issue of "control" here.

Finally, we reject Mahagama's contention that the trial court's written order lacks the specific findings purportedly required "to meet the 'rudiments' of due process." As Yue notes in his opposition, the principal authority Mahagama invokes for that contention, *Lavine v. Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019, 1029, concerns sanctions imposed for frivolous actions or delaying tactics under section 128.5, not discovery sanctions of the kind imposed here. In contrast to sanctions imposed under section 128.5, when imposing discovery sanctions there is "no need for the trial court to make written findings explaining its order." (*Mattco Forge*,

11

*supra*, 223 Cal.App.3d at p. 1438.)  Thus, Mahagama's "due process" argument is unavailing.

In sum, the trial court rightly observed that Yue's June 25 motion to compel was necessitated by "Mahagama's unreasonable conduct."  It identified as unreasonable conduct Mahagama's failure to provide code-compliant responses to Yue's requests before the filing of Yue's motion to compel.  The record supports these determinations with substantial evidence, and Mahagama has not demonstrated on appeal that he had any substantial justification for his failures in this respect.  Thus, because "[a]n order . . . correct on any theory will be affirmed on appeal," we find no abuse of discretion here.  (*Mattco Forge, supra,* 223 Cal.App.3d at p. 1440.)

## II.

### *This Court Assesses Sanctions on Mahagama and His Counsel for Filing a Frivolous Appeal.*

Yue moves this court to sanction Mahagama under section 907, which authorizes a "reviewing court" to "add to the costs on appeal such damages as may be just," upon finding "that the appeal was frivolous or taken solely for delay."  (See also Cal. Rules of Court, rule 8.276 (a)(1).)  For the reasons given below, we find the instant appeal frivolous and grant the motion for sanctions accordingly.

In inquiring as to whether an appeal is frivolous, a reviewing court measures the appeal against subjective and objective standards.  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649.)  An appeal is subjectively frivolous "when it is prosecuted for an improper motive," such as harassment or delay, and objectively frivolous "when it indisputably has no merit."  (*Id.* at p. 650.)  "The two standards are often used together," as when reviewing courts view a "total lack of merit" as "evidence that [the] appellant must have intended it only for delay."  (*Id.* at p. 649.)

12

This appeal's "total lack of merit" is apparent. The only issue raised is whether the trial court abused its discretion by sanctioning Mahagama on September 9. The applicable standard of review is exceedingly deferential to the trial court, requiring us to uphold the order if it is "correct on any theory" and allowing us to reverse it "only if it was arbitrary, capricious, or whimsical." (*Mattco Forge, supra*, 223 Cal.App.3d at p. 1440; *Howell, supra*, 18 Cal.App.5th at p. 191.) Here, the order itself justifies the imposition of sanctions on at least one theory that is not seriously contested: the failure of Mahagama's May 22 responses to comply with relevant provisions of the Code of Civil Procedure. That failure "necessitated the filing" of Yue's June 25 motion to compel and thus, the trial court ordered Mahagama to pay Yue's attorney for the time he spent on that motion. Under *Sinaiko, supra*, 148 Cal.App.4th at pp. 408-409, an authority cited in Mahagama's own opening brief, Mahagama's subsequent filing of ostensibly code-compliant responses did nothing to affect the court's authority to sanction him. And as a matter of logic, responses filed after Yue's motion to compel could do nothing to affect the portion of the trial court's order discussed *ante*.

For Mahagama and his counsel at Fidelity National Title Group, Inc. to challenge of a $7,314 sanction via a patently unmeritorious and far more costly appeal is sanctionable—whether or not the purpose was delay or harassment.[6] An appeal may be held to be frivolous "when it is prosecuted

---

[6] The record in this case—including Yue's unopposed April 25 and June 16, 2022 requests for judicial notice under Evidence Code section 452, subdivision (d), which we grant—reflects a pattern of failure to communicate and other unreasonable conduct by Mahagama and his counsel that have driven up Yue's attorney fees and costs in this appeal and in the trial court. While we make no finding regarding the motives of Mahagama and his counsel, we note that such conduct is not without consequences; it wastes the

13

for an improper motive—to harass the respondent or delay the effect of an adverse judgment—*or* when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty*, *supra,* 31 Cal.3d at p. 650, italics added.)  Here, any reasonable attorney would recognize this appeal is totally and completely without merit.

Accordingly, we find the instant appeal frivolous and therefore sanction Mahagama and his attorney in the amount of Yue's attorney fees and costs. That amount includes the costs of opposing Mahagama's appeal, moving for sanctions, and replying to Mahagama's opposition to sanctions after Mahagama's late filing of a "Replacement Reply Brief" mitigated the relevance of some of Yue's arguments in the original motion for sanctions. The total cost so incurred by Yue is $56,389.70.

## DISPOSITION

We affirm the trial court's order.  We assess sanctions of $56,389.70 jointly and severally against Mahagama and his attorney, to be paid immediately to Yue's attorney.

---

courts' and other litigants' time and imposes costs that can be prohibitive for litigants of limited means.

14

_____

STEWART, Acting P.J.

We concur:

_____

MILLER, J.

_____

MAYFIELD, J.[*]

*Yue v. Alvernaz Partners, LLC et al.* (A161119)

---

[*] Judge of the Mendocino Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.